Mr. Chief Justice Warren
 

 delivered the opinion of the Court.
 

 At issue in this litigation is the constitutional validity, under the Fourteenth Amendment to the Federal Constitution, of the apportionment of seats in the New York Legislature.
 

 I.
 

 Appellants initially brought this action on May 1, 1961, in the Federal District Court for the Southern District of New York. Plaintiffs below included individual citizens and voters residing in five of the six most populous New York counties (Bronx, Kings, Nassau, New York and Queens), suing in their own behalf and on behalf of all New York citizens similarly situated. Appellees, sued in their representative capacities, are various state and local officials charged with .duties in connection with reapportionment and the conducting of state elections. The complaint claimed rights under the Civil Rights Act, 42 U. S. C. §§ 1983, 1988, and asserted jurisdiction under 28 U. S. C. § 1343 (3).
 

 Plaintiffs below sought a declaration that those provisions of the State Constitution which establish the formulas for apportioning seats in the two houses of the New York Legislature, and the statutes implementing them, are unconstitutional since violative of the Fourteenth Amendment to the Federal Constitution. The complaint further asked the District Court to enjoin defendants
 
 *768
 
 from performing any acts or duties in compliance with the allegedly unconstitutional legislative apportionment provisions. Plaintiffs asserted that they had no adequate remedy other than the judicial relief sought, and requested the court to retain jurisdiction until the New York Legislature, “freed from the fetters imposed by the Constitutional provisions invalidated by this Court, provides for such apportionment of the State legislature as will insure to the urban voters of New York State the rights guaranteed them by the Constitution of the United States.”
 

 In attacking the existing apportionment of seats in the New York Legislature, plaintiffs below stated, more particularly, that:
 

 “The provisions of the New York State Constitution, Article III, §§ 2-5, violate the XIV Amendment of the Constitution of the United States because the apportionment formula contained therein results, and must necessarily result, when applied to the population figures of the State in a grossly unfair weighting of both houses in the State legislature in favor of the lesser populated rural areas of the state to the great disadvantage of the densely populated urban centers of the state. . . .
 

 “As a result of the constitutional provisions challenged herein, the Plaintiffs’ votes are not as effective in either house of the legislature as the votes of other citizens residing in rural areas of the state. Plaintiffs and all others similarly situated suffer a debasement of their votes by virtue of the arbitrary, obsolete and unconstitutional apportionment of the legislature and they and all others similarly situated are denied the equal protection of the laws required by the Constitution of the United States.”
 

 The complaint asserted that the legislative apportionment provisions of the 1894 New York Constitution, as
 
 *769
 
 amended, are not only presently unconstitutional, but also were invalid and violative of the Fourteenth Amendment at the time of their adoption, and that “[t]he population growth in the State of New York and the shifts of population to urban areas have aggravated the violation of Plaintiffs’ rights under the XIV Amendment.”
 

 As requested by plaintiffs, a three-judge District Court was convened.
 
 [1]
 
 The New York City defendants admitted the allegations of the complaint and requested the Court to grant plaintiffs the relief they were seeking. The remaining defendants moved to dismiss. On January 11, .1962, the District Court announced its initial decision. It held that it had jurisdiction but dismissed the complaint, without reaching the merits, on the ground that it failed to state a claim upon which relief could be granted, since the issues raised were nonjusticiable. 202 F. Supp. 741. In discussing the allegations made by plaintiffs, the Court stated:
 

 “The complaint specifically cites as the cause of this allegedly unconstitutional distribution of state legislative representation the New York Constitutional provisions requiring that:
 

 “(a) '.
 
 .
 
 . the total of fifty Senators established by the Constitution of 1894 shall be increased by those Senators to which any of the larger counties become entitled in addition to their allotment as of 1894, but without effect for decreases in other large counties . . .’
 

 “(b) no county may have 'four or more Senators unless it has a full ratio for each Senator . . .’ and
 

 
 *770
 
 “(c) ‘. . . every county except Hamilton shall always be entitled [in the Assembly] to one member coupled with the limitation of the entire membership to 150 members . . . .’ ”
 
 [2]
 

 Noting that the 1894 Constitution, containing the present apportionment provisions, was approved by a majority of the State’s electorate before becoming effective, and that, subsequently the voters had twice disapproved proposals for a constitutional convention to amend the constitutional provisions relating to legislative apportionment, the District Court concluded that, in any event, there was a “want of equity in the relief sought, or, to view it slightly differently, want of justiciability, [which] clearly demands dismissal.”
 

 Plaintiffs appealed to this Court from the District Court’s dismissal of their complaint. On June 11, 1962, we vacated the judgment below and remanded for further consideration in the light of
 
 Baker
 
 v.
 
 Carr,
 
 369 U. S. 186, which had been decided subsequent to the District Court’s dismissal of the suit below. 370 U. S. 190. In vacating and remanding, we stated:
 

 “Our well-established practice of a remand for consideration in the light of a subsequent decision therefore applies. . . . [W]e believe that the court below should be the first to consider the merits of the federal constitutional claim, free from any doubts as to its justiciability and as 'to the merits of alleged arbitrary and invidious geographical discrimination.”
 
 [3]
 

 
 *771
 
 On August 16, 1962, the District Court, after conducting a hearing,
 
 [4]
 
 dismissed the complaint on the merits, concluding that plaintiffs had not shown by a preponderance of the evidence that there was any invidious discrimination, that the apportionment provisions of the New York Constitution were rational and not arbitrary, that they were of historical origin and contained no improper geographical discrimination, that they could be amended by an electoral majority of the citizens of New York, and that therefore the apportionment of seats in the New York Senate and Assembly was not unconstitutional. 208 F. Supp. 368. Finding no failure by the New York Legislature to comply with the state constitutional pro
 
 *772
 
 visions requiring and establishing the formulas for periodic reapportionment of Senate and Assembly seats, the court below relied on the presumption of constitutionality attaching to a state constitutional provision and the necessity for a clear violation “before a federal court of equity will lend its power to the disruption of the state election processes . . . .” After postulating a number of “tests” for invidious discrimination, including the “[Rationality of state policy and whether or not the system is arbitrary,” “[w]hether or not the present complexion of the legislature has a historical basis,” whether the electorate has an available political remedy, and “[g]eography, including accessibility of legislative representatives to their electors,” the Court concluded that none of the relevant New York constitutional provisions were arbitrary or irrational in giving weight to, in addition to population, “the ingredient of area, accessibility and character of interest.” Stating that in New York “the county is a classic unit of governmental organization and administration,” the District Court found that the allocation of one Assembly seat to each county was grounded on a historical basis. The Court noted that the 1957 vote on whether to call a constitutional convention was “heralded as an issue of apportionment” by the then Governor, but that nevertheless a majority of the State’s voters chose not to have a constitutional convention convened. The Court also noted that “if strict population standards were adopted certain undesirable results might follow such as an increase in the size of the legislature to such an extent that effective debate may be hampered or an increase in the size of districts to such an extent that contacts between the individual legislator and his constituents may become impracticable.”
 
 [5]
 
 As a result of the District
 
 *773
 
 Court’s dismissal of the complaint, the November 1962 election of New York legislators was conducted pursuant to the existing apportionment scheme. A timely appeal to this Court was filed, and we noted probable jurisdiction on June 10, 1963. 374 IT. S. 802.
 

 II.
 

 Apportionment of seats in the two houses of the New York Legislature is prescribed by certain formulas contained in the 1894 State Constitution, as amended. Reapportionment is effected periodically by statutory provisions,
 
 [6]
 
 enacted in compliance with the constitutionally established formulas. The county is the basic unit of area for apportionment purposes, except that two sparsely populated counties, Fulton and Hamilton, are treated as one. New York uses citizen population instead of total population, excluding aliens from consideration, for purposes of legislative apportionment. The number of assemblymen is fixed at 150, while the size of the Senate is prescribed as not less than 50 and may vary with each apportionment.
 
 [7]
 
 All members of both houses of the New York Legislature are elected for two-year terms only, in even-numbered years.
 

 With respect to the Senate, after providing that that body should initially have 50 seats and creating 50 senatorial districts, the New York Constitution, in Art. Ill, § 4, as amended, provides for decennial readjustment of the size of the Senate and reapportionment of senatorial
 
 *774
 
 seats, beginning in 1932 and every decade thereafter, in the following manner:
 

 “Such districts shall be so readjusted or altered that each senate district shall contain as nearly as may be an equal number of inhabitants, excluding aliens, and be in as compact form as practicable, and shall remain unaltered until the first year of the next decade as above defined, and shall at all times consist of contiguous territory, and no county shall be divided in the formation of a senate district except to make two or more senate districts wholly in such county. . . .
 

 “No county shall have four or more senators unless it shall have a full ratio for each senator. No county shall have more than one-third of all the senators; and no two counties or the territory thereof as now organized, which are adjoining counties, or which are separated only by public waters, shall have more than one-half of all the senators.
 

 “The ratio for apportioning senators shall always be obtained by dividing the number of inhabitants, excluding aliens, by fifty, and the senate shall always be composed of fifty members, except that if any county having three or more senators at the time of any apportionment shall be entitled on such ratio to an additional senator or senators, such additional senator or senators shall be given to such county in addition to the fifty senators, and the whole number of senators shall be increased to that extent."
 
 [8]
 

 As interpreted by practice and judicial decision, reapportionment and readjustment of senatorial representation is accomplished in several stages. First, the total population of the State, excluding aliens, as determined by the last federal census, is divided by 50 (the minimum
 
 *775
 
 number of Senate seats) in order to obtain a so-called “ratio” figure. The counties on account of which the size of the Senate might have to be increased are then ascertained — counties having three or more ratios,
 
 i. e.,
 
 more than 6% of the State’s total citizen population each. Under the existing apportionment, only five counties are in the 6%-or-more class, four of New York City’s five counties and upstate Erie County (Buffalo and environs). Nassau County (suburban New York City) will be added to this class in the pending reapportionment based on the 1960 census. After those counties that come within the “populous” category, so defined, have been ascertained, they are then allocated one senatorial seat for each full ratio. Fractions of a ratio are disregarded, and each populous county is thereafter divided into the appropriate number of Senate districts. In ascertaining the size of the Senate, the total number of additional seats resulting from the growth of the populous counties since 1894 is added to the 50 original seats. And, while the total number of seats which any of the populous counties has gained since 1894 is added to the 50 original seats, the number of seats which any of them has lost since 1894 is not deducted from the total number of seats to be added. Currently the New York Senate, as reapportioned in 1953, has 58 seats. From that total, the number allocated to the populous counties is subtracted — 27 under the 1953 apportionment — and the remaining seats — 31 under the 1953 scheme — are then apportioned among the less populous counties. When reapportioned on the basis of 1960 census figures, the Senate will have 57 seats, with 26 allotted to the populous counties, as a result of applying the constitutionally prescribed ratio and the requirement of a full ratio in order for a populous county to be given more than three Senate seats.
 

 The second stage of applying the senatorial apportionment formula involves the allocation of seats to the less
 
 *776
 
 populous counties,
 
 i. e.,
 
 those having less than 6% of the State’s total citizen population (less than three full ratios). After the number of Senate seats allocated to the populous counties (and thus the size of the Senate) has been determined, a second population ratio figure is obtained by dividing the number of seats available for distribution to the less populous counties, 31 under both the 1950 and 1960 censuses, into the total citizen population of the less populous counties. Less populous counties which are entitled to two or three seats, as determined by comparing a county’s population with the second ratio figure thus ascertained, are then divided into senatorial districts. A less populous county is entitled to three seats if it has less than three full first ratios, but has more than three, or has two and a large fraction, second ratios. Since the first ratio is significantly larger than the second, a county can have less than three first ratios but more than three second ratios. Finally, counties with substantially less than one second ratio are combined into multicounty districts.
 

 The result of applying this complicated apportionment formula is to give the populous counties markedly less senatorial representation, when compared with respective population figures, than the less populous counties. Under the 1953 apportionment, based on the 1950 census, a senator from one of the less populous counties represented, on the average, 195,859 citizens, while a senator from a populous county represented an average of 301,178. The constitutionally prescribed first ratio figure was 284,069, while the second ratio was, of course, only 195,859. Under the pending apportionment based on the 1960 census, the first ratio figure is 324,816, and the average population of the senatorial districts in the populous counties will be 366,128. On the other hand, the second ratio, and the average population of the senatorial districts in the less populous counties, is only 216,822.
 
 *777
 
 Thus, a citizen in a less populous county had, under the 1953 apportionment, over 1.5 times the representation, on the average, of a citizen in a populous county, and, under the apportionment based on the 1960 census, this ratio will be about 1.7-to-l.
 
 [9]
 

 The 1894 New York Constitution also provided for an Assembly composed of 150 members, in Art. Ill, § 2. Under the formula prescribed by Art. Ill, § 5, of the New York Constitution, each of the State’s 62 counties, except Hamilton County which is combined with Fulton County for purposes of Assembly representation, is initially given one Assembly seat. The remaining 89 seats are then allocated among the various counties in accordance with a “ratio” figure obtained by dividing the total number of seats, 150, into the State’s total citizen population. Applying the constitutional formula, a county whose population is at least 1% times this ratio (1% of the total citizen population) is given one additional assemblyman. The remaining Assembly seats are then apportioned among those counties whose citizen populations total two or more whole ratios, with any remaining seats being allocated among the counties on the basis of “highest remainders.” Finally, those counties receiving more than one seat are divided into the appropriate number of Assembly districts. In allocating 61 of the 150 Assembly seats on a basis wholly unrelated to population, and in establishing three separate categories of counties for the apportionment of Assembly representation, the constitutional provisions relating to the apportionment of Assembly seats plainly result in a favoring of the less populous counties. Under the new reapportionment based on
 
 *778
 
 1960 census figures, the smallest 44 counties will each be given one seat for an average of 62,765 citizen inhabitants per seat, three counties will receive two seats each, with a total of six assemblymen representing an average of 93,478 citizen inhabitants, and the 14 most populous counties will be given the remaining 100 seats, resulting in an average representation figure of 129,183 citizen inhabitants each.
 
 [10]
 

 Although the New York Legislature has not yet reapportioned on the basis of 1960 census figures,
 
 [11]
 
 the outlines of the forthcoming apportionment can be predicted with assurance. Since the rules prescribed in the New York Constitution for apportioning the Senate are so explicit and detailed, the New York Legislature has little discretion, in decennially enacting implementing statutory reapportionment provisions, except in determining which of the less populous counties are to be joined together in multicounty districts and in districting within counties having more than one senator. Similarly, the legislature has little discretion in reapportioning Assembly seats.
 
 [12]
 
 
 *779
 
 A number of other rather detailed rules, some mandatory and some only directive, are included in the constitutional provisions prescribing the system for apportioning seats in the two houses of the New York Legislature, and are set out in Art. Ill, §§ 2-5, of the New York Constitution.
 
 [13]
 

 When the New York Legislature was reapportioned in 1953, on the basis of 1950 census figures, assemblymen representing 37.1% of the State’s citizens constituted a majority in that body, and senators representing 40.9% of the citizens comprised a majority in the Senate. Under the still effective 1953 apportionment, applying 1960 census figures, assemblymen representing 34.7% of the citizens constitute a majority in the Assembly, and senators representing 41.8% of the citizens constitute a majority in that body. If reapportionment were carried out under the existing constitutional formulas, applying 1960 census figures, 37.5% of the State’s citizens would
 
 *780
 
 reside in districts electing a majority in the Assembly, and 38.1% would live in areas electing a majority of the members of the Senate. When the State was reapportioned in 1953 on the basis of the 1950 census, the most populous Assembly district had 11.9 times as many citizens as the least populous one, and a similar ratio in the Senate was about 2.4-to-l. Under the current apportionment, applying 1960 census figures, the citizen population-variance ratio between the most populous and least populous Assembly districts is about 21-to-l, and a similar ratio in the Senate is about 3.9-to-l. If the Assembly were reapportioned under the existing constitutional formulas, the most populous Assembly district would have about 12.7 times as many citizens as the least populous one, and a similar ratio in the Senate would be about 2.6-to-l.
 

 According to 1960 census figures, the six counties where the six individual appellants reside had a citizen population of 9,129,780, or 56.2% of the State’s total citizen population of 16,240,786. They are currently represented by 72 assemblymen and 28 senators — 48% of the Assembly and 48.3% of the Senate. When the legislature reapportions on the basis of the 1960 census figures, these six counties will have 26 Senate seats and 69 Assembly seats, or 45.6% and 46%, respectively, of the seats in the two houses. The 10 most heavily populated counties in New York, with about 73.5% of the total citizen population, are given, under the current apportionment, 38 Senate seats, 65.5% of the membership of that body, and 93 Assembly seats, 62% of the seats in that house. When the legislature reapportions on the basis of the 1960 census figures, these same 10 counties will be given 37 Senate seats and 92 Assembly seats, 64.9% and 61.3%, respectively, of the membership of the two houses. The five counties comprising New York City have 45.7% of the State’s total citizen popu
 
 *781
 
 lation, and are given, under the current apportionment, 43.1% of the Senate seats and 43.3% of the seats in the Assembly. When the legislature reapportions on the basis of the 1960 census figures, these same counties will be given 36.8% and 37.3%, respectively, of the membership of the two houses.
 

 Under the existing senatorial apportionment, applying 1960 census figures, Suffolk County’s one senator represents a citizen population of 650,112, and Nassau County’s three senators represent an average of 425,267 citizens each. The least populous senatorial district, on the other hand, comprising Saratoga, Warren, and Essex Counties, has a total population of only 166,715.
 
 [14]
 
 Under the forthcoming reapportionment based on the 1960 census, Nassau County will again be allocated only three Senate seats, with an average population of 425,267, while the least populous senatorial district, which will probably comprise Putnam and Rockland Counties, will have a citizen population of only 162,840.
 
 [15]
 
 Onondaga County, with a total citizen population of 414,770, less than the average population of
 
 e-ach
 
 Nassau County district, will nevertheless be given
 
 two
 
 Senate seats. Because of the effect of the full-ratio requirement applicable only to the populous counties, Nassau County, despite the fact that its citizen population increased from 655,690 to 1,275,801,
 
 *782
 
 will not obtain a single additional senatorial seat as a result of the reapportionment based on 1960 census figures. And Monroe County, with a citizen population of 571,029, since not having more than 6% of the State’s total citizen population, will have the same number of senators under the new apportionment, three, as Nassau County, although it has less than half that county’s population. New York City’s 20 senators will represent an average citizen population of 360,193, while the 15 multi-county senatorial districts to be created upstate will have an average of only 207,528 citizens per district. Because of the operation of the full-ratio rule with respect to counties having more than 6% of the State’s total citizen population each, the unrepresented remainders (above a full first ratio but short of another full first ratio which is required for an additional Senate seat) in three of the urban counties will be as follows: Nassau, 301,353; New York, 284,805; and Kings, 244,798. Thus, over 800,000 citizens will not be counted in the apportionment of Senate seats, even though the unrepresented remainders in two of these three counties equal or exceed the statewide average population of 284,926 citizens per district. Furthermore, the effect of the rule requiring an increase in the number of Senate seats because of the entitlement of populous counties to added senatorial representation, coupled with the failure to reduce the size of the Senate because of reductions in the number of seats to which a populous county is entitled (as compared with its senatorial representation in 1894), is that the comparative voting power of the populous counties in the Senate decreases as their share of the State’s total population increases.
 

 With respect to the Assembly, the six assemblymen currently elected from Nassau County represent an average citizen population of 212,634, and one of that county’s current Assembly districts has a citizen population of
 
 *783
 
 314,721. Suffolk County’s three assemblymen presently represent an average of 216,704 citizens. On the other hand, the least populous Assembly district, Schuyler County, has a citizen population, according to the 1960 census, of only 14,974, and yet, in accordance with the constitutional formula, is allocated one Assembly seat.
 
 [16]
 
 Under the new apportionment, Schuyler County will again be given one Assembly seat, while one projected Monroe County district will have a citizen population of 190,343 and an Assembly district in Suffolk County will have over 170,000 citizens.
 
 [17]
 
 Additionally, the average population of the 54 Assembly districts in New York City’s four populous counties will be in excess of 132,000 citizens each.
 

 Under the 1953 apportionment, based on 1950 census figures, the most populous Assembly district, in Onondaga County, had a citizen population of 167,226, while the least populous district was that comprising Schuyler County, with only 14,066 citizens. In the Senate, the most populous districts were the four in Bronx County, averaging 344,545 citizens each, while the least populous district had a citizen population of only 146,666.
 

 No adequate political' remedy to obtain relief against alleged legislative malapportionment appears to exist in
 
 *784
 
 New York.
 
 [18]
 
 No initiative procedure exists under New York law. A proposal to amend the State Constitution can be submitted to a vote by the State’s electorate only after approval by a majority of both houses of two successive sessions of the New York Legislature.
 
 [19]
 
 A majority vote of both houses of the legislature is also required before the electorate can vote on the calling of a constitutional convention.
 
 [20]
 
 Additionally, under New York law the question of whether a constitutional convention should be called must be submitted to the electorate every 20 years, commencing in 1957.
 
 [21]
 
 But even if a constitutional convention were convened, the same alleged discrimination which currently exists in the apportionment of Senate seats against each of the counties having 6% or more of a State’s citizen population would be perpetuated in the election of convention delegates.
 
 [22]
 
 And, since the New York Legislature has rather consistently complied with the state constitutional requirement for decennial legislative reapportionment in accordance with the rather explicit constitutional rules, enact
 
 *785
 
 ing effective apportionment statutes in 1907, 1917, 1943, and 1953, judicial relief in the state courts to remedy the alleged malapportionment was presumably unavailable.
 
 [23]
 

 III.
 

 In
 
 Reynolds
 
 v.
 
 Sims, ante,
 
 p. 533, decided also this date, we held that the Equal Protection Clause requires that seats in both houses of a bicameral state legislature must be apportioned substantially on a population basis. Neither house of the New York Legislature, under the state constitutional formulas and the implementing statutory provisions here attacked, is presently or, when reapportioned on the basis of 1960 census figures, will be apportioned sufficiently on a population basis to be constitutionally sustainable. Accordingly, we hold that the District Court erred in upholding the constitutionality of New York’s scheme of legislative apportionment.
 

 We have examined the state constitutional formulas governing legislative apportionment in New York in a detailed fashion in order to point out that, as a result of following these provisions, the weight of the votes of those living in populous areas is of necessity substantially diluted in effect. However complicated or sophisticated an apportionment scheme might be, it cannot, consistent with the Equal Protection Clause, result in a significant undervaluation of the weight of the votes of certain of a State’s citizens merely because of where they happen to reside. New York’s constitutional formulas relating to
 
 *786
 
 legislative apportionment demonstrably include a built-in bias against voters living in the State’s more populous counties. And the legislative representation accorded to the urban and suburban areas becomes proportionately less as the population of those areas increases. With the size of the Assembly fixed at 150, with a substantial number of Assembly seats distributed to sparsely populated counties without regard to population, and with an additional seat given to counties having 1% population ratios, the population-variance ratios between the more populous and the less populous counties will continually increase so long as population growth proceeds at a disparate rate in various areas of the State. With respect to the Senate, significantly different population ratio figures are used in determining the number of Senate seats to be given to the more populous and the less populous counties, and the more populous counties are required to have full first ratios in order to be entitled to additional senatorial representation. Also, in ascertaining the size of the Senate, the number of seats by which the senatorial representation of the more populous counties has increased since 1894 is added to 50, but the number of Senate seats that some of the more populous counties have lost since 1894 is not subtracted from that figure. Thus, an increasingly smaller percentage of the State’s population will, in all probability, reside in senatorial districts electing a majority of the members of that body. Despite the opaque intricacies of New York’s constitutional formulas relating to legislative apportionment, when the effect of these provisions, and the statutes implementing them, on the right to vote of those individuals living in the disfavored areas of the State is considered, we conclude that neither the existing scheme nor the forthcoming one can be constitutionally condoned.
 

 We find it inappropriate to discuss questions relating to remedies at the present time, beyond what we said in
 
 *787
 
 our opinion in
 
 Reynolds.
 

 [24]
 

 ,
 
 Since all members of both houses of the New York Legislature will be elected in November 1964, the court below, acting under equitable principles, must now determine whether, because of the imminence of that election and in order to give the New York Legislature an opportunity to fashion a constitutionally valid legislative apportionment plan, it would be desirable to permit the 1964 election of legislators to be conducted pursuant to the existing provisions, or whether under the circumstances the effectuation of appellants’ right to a properly weighted voice in the election of state legislators should not be delayed beyond the 1964 election. We therefore reverse the decision below and remand the case to the District Court for further proceedings consistent with the views stated here and in our opinion in
 
 Reynolds
 
 v.
 
 Sims.
 

 It is so ordered.
 

 [For dissenting opinion of MR. Justice Harlan, see
 
 ante,
 
 p. 589.]
 

 [For dissenting opinion of Mr. Justice Stewart, see
 
 post,
 
 p. 744.]
 

 [1]
 

 See 196 F. Supp. 758, where the District Court concluded that the suit presented issues warranting the convening of a three-judge court, over defendants’ motions to dismiss the complaint for lack of jurisdiction and for failure to state a claim on which relief could be granted.
 

 [2]
 

 202 F. Supp., at 743. AH decisions of the District Court, and also this Court’s initial decision in this litigation, are reported
 
 sub nom. WMCA, Inc.,
 
 v.
 
 Simon.
 

 [3]
 

 370 U. S., at 191. Shortly after we remanded the case, the District Court ordered defendants to answer or otherwise move in respect to the complaint. Another of the defendants, a Nassau County official, joined the New York City defendants in admitting most of the allegations, and requested the Court to grant plaintiffs the relief
 
 *771
 
 which they were seeking. The remaining defendants, presently appellees, denied the material allegations of the complaint and asserted varied defenses.
 

 [4]
 

 At the hearing on the merits a large amount of statistical evidence was introduced showing the population and citizen population of New York under various censuses, including the populations of the State’s 62 counties and the Senate and Assembly districts established under the various apportionments. The 1953 apportionment of Senate and Assembly seats under the 1950 census was shown, and other statistical computations showing the apportionment to be made by the legislature under the 1960 census figures, as a result of applying the pertinent constitutional provisions, were also introduced into evidence.
 

 The District Court refused to receive evidence showing the effect of the alleged malapportionment on citizens of several of the most populous counties with respect to financial matters such as the collection of state taxes and the disbursement of state assistance. The Court also excluded evidence offered to show that the State Constitution’s apportionment formulas were devised for the express purpose of creating a class of citizens whose representation was inferior to that of a more preferred class, and that there had been intentional discrimination against the citizens of New York City in the designing of the legislative apportionment provisions of the 1894 Constitution. Since we hold that the court below erred in finding the New York legislative apportionment scheme here challenged to be constitutionally valid, we express no view on the correctness of the District Court’s exclusion of this evidence.
 

 [5]
 

 A concurring opinion stated that, while the six counties where plaintiffs reside contain 56.2% of the State’s population^ they comprise only 3.1% of its area, and, if legislative apportionment were
 
 *773
 
 “based solely on population, . . . 3% of the state’s area would dominate the rest of New York.”
 

 [6]
 

 The existing plan of apportionment of Senate and Assembly seats is provided for in McKinney’s N. Y. Laws, 1952 (Supp. 1963), State Law, §§ 120-124, enacted by the New York Legislature in 1953.
 

 [7]
 

 Article III, § 2, of the 1894 New York Constitution provided for a 50-member Senate and a 150-member Assembly. Article III, § 3, of the 1894 Constitution prescribed a detailed plan for the apportionment of the 50 Senate seats, subject to periodic alteration by the legislature under the formula provided for in Art. Ill, § 4.
 

 [8]
 

 N. Y. Const., Art. Ill, § 4.
 

 [9]
 

 For an extended discussion of the apportionment of seats in the New York Senate under the pertinent state constitutional provisions, see Silva, Apportionment of the New York Senate, 30 Ford. L. Rev. 595 (1962). See also Silva, Legislative Representation — With Special Reference to New York, 27 Law & Contemp. Prob. 408 (1962).
 

 [10]
 

 For a thorough discussion of the apportionment of seats in the New York Assembly pursuant to the relevant state constitutional provisions, see Silva, Apportionment of the New York Assembly, 31 Ford. L. Rev. 1 (1962).
 

 [11]
 

 Article III, § 4, of the New York Constitution requires the legislature to reapportion and redistriet Senate seats no later than 1966, and Art. Ill, § 5, provides that “[t]he members of the Assembly shall be chosen by single districts and shall be apportioned by the legislature at each regular session at which the senate districts are readjusted or altered, and by the same law, among the several counties of the state, as nearly as may be according to the number of their respective inhabitants, excluding aliens.”
 

 [12]
 

 While the legislature has the sole power to apportion Assembly seats among the State's counties, in accordance with the constitutional formula, the New York Constitution gives local governmental authorities the exclusive power to divide their respective counties into Assembly districts. A county having only one assemblyman constitutes one Assembly district by itself, of course, and therefore
 
 *779
 
 cannot be divided into Assembly districts. But, with respect to counties given more than one Assembly seat, the New York Constitution, Art. Ill, § 5, provides: “In any county entitled to more than one member [of the Assembly], the board of supervisors, and in any city embracing an entire county and having no board of supervisors,, the common council, or if there be none, the body exercising the powers of a common council, shall . . . divide such counties into assembly districts as nearly equal in number of inhabitants, excluding aliens, as may be . . . .”
 

 [13]
 

 Under these specific provisions, while more than one Senate or Assembly district can be contained within the whole of a single county, and while a Senate district may consist of more than one county, no county border line can be broken in the formation of either type of district. Both Senate and Assembly districts are required to consist of contiguous territory, and each Assembly district is required to be wholly within the same senatorial district. Each Assembly district in the same county shall contain, as nearly as may be, an equal number of citizen inhabitants, and shall consist of “convenient” territory and be as compact as practicable. Further detailed provisions relate to the division of towns between adjoining districts, and the equalization of population among Senate districts in the same county and Assembly districts in the same Senate district.
 

 [14]
 

 Included as Appendix D to the District Court’s opinion on the merits is a map of the State of New York showing the 58 senatorial districts under the existing apportionment. 208 F. Supp., at 383. Appendix E contains a chart which includes census figures showing the 1960 population of each of New York’s 62 counties.
 
 Id.,
 
 at 384.
 

 [15]
 

 Appendix A to the District Court’s opinion on the merits is a chart showing the apportionment of senatorial seats which would result if the Senate were reapportioned on the basis of the present constitutional formula, using 1960 census figures, including the citizen populations of the 13 most populous counties, the number of senators to be allocated to each, and the average citizen population per senator in each of the projected senatorial districts. 208 F. Supp., at 380.
 

 [16]
 

 Included as Appendix C to the District Court’s opinion on the merits is a map of the State of New York showing the number of Assembly seats apportioned to each county under the existing apportionment. 208 F. Supp., at 383. Appendix E contains a chart which includes census figures showing the 1960 population of each of New York’s 62 counties.
 
 Id.,
 
 at 384.
 

 [17]
 

 Appendix B to the District Court’s opinion on the merits is a chart showing the apportionment of Assembly seats which would result if the Assembly were reapportioned under the present constitutional formula, using 1960 census figures, including the number of Assembly seats to be given to each county and the approximate citizen population in each projected Assembly district. 208 F. Supp., at 381-382.
 

 [18]
 

 For a discussion of the lack of federal constitutional significance of the presence or absence of an available political remedy, see
 
 Lucas
 
 v.
 
 Forty-Fourth General Assembly of Colorado, post,
 
 pp. 736-737, decided also this date,
 

 [19]
 

 Under Art. XIX, § 1, of the New York Constitution.
 

 [20]
 

 According to Art. XIX, § 2, of the New York Constitution, which provides that the question of whether a constitutional convention should be called can be submitted to the electorate “at such times as the legislature may by law provide
 
 . . .
 

 [21]
 

 Pursuant to Art. XIX, § 2, of the New York Constitution. In 1957 the State’s electorate, by a close vote, disapproved the calling of a constitutional convention, and the question is not required to be submitted to the people again until 1977.
 

 [22]
 

 Under Art. XIX, § 2, of the New York Constitution, delegates to a constitutional convention are elected three per senatorial district, plus 15 delegates elected at large.
 

 [23]
 

 Decisions by the New York Court of Appeals indicate that state courts will do no more than determine whether the New York Legislature has properly complied with the state constitutional provisions relating to legislative apportionment in enacting implementing statutory provisions. See,
 
 e. g., In re Sherrill,
 
 188 N. Y. 185,
 
 81
 
 N. E. 124 (1907);
 
 In re Dowling,
 
 219 N. Y. 44, 113 N. E. 545 (1916); and
 
 In re Fay,
 
 291 N. Y. 198, 52 N. E. 2d 97 (1943).
 

 [24]
 

 See
 
 Reynolds
 
 v.
 
 Sims, ante,
 
 p. 585.