## TRAVIA ET AL. *v.* LOMENZO, SECRETARY OF STATE OF NEW YORK, ET AL.

No. 1218. Decided June 1, 1965.

*Simon H. Rifkind* and *Edward N. Costikyan* for appellants.

*Louis J. Lefkowitz,* Attorney General of New York, *Daniel M. Cohen* and *George D. Zuckerman,* Assistant Attorneys General, *Donald Zimmerman,* Special Assistant Attorney General, and *Orrin G. Judd* for Lomenzo et al.; and *Leonard B. Sand* and *Max Gross* for WMCA, Inc., et al., appellees.

PER CURIAM.

The motion to accelerate the appeal is denied. The application for a stay, addressed to MR. JUSTICE HARLAN as Circuit Justice and referred by him to the Court for consideration under Rule 50 (6), is denied.

MR. JUSTICE HARLAN, dissenting.

An application has been made to me, as Circuit Justice, for a stay pending appeal from an order of a three-judge

District Court, dated May 24, 1965, ordering New York to hold a special legislative election on November 2, 1965, under the electoral scheme embodied in reapportionment "Plan A"[1] passed by the New York Legislature, signed by the Governor, and held unconstitutional under the State Constitution by the New York Court of Appeals. The stay application was accompanied by a motion, addressed to the Court, asking for an acceleration and immediate hearing of the appeal, to which the relief sought from me is incident. Because the stay and acceleration questions were in my opinion inextricably related and involved issues of far-reaching importance, I referred the stay application to the full Court for determination (see Sup. Ct. Rule 50 (6)) in conjunction with the motion to accelerate the appeal. The Court now denies both the stay and motion to accelerate, and I respectfully dissent.

"Plan A" was one of four alternative reapportionment plans passed by the New York Legislature under the impact of an order of the District Court, dated July 27, 1964, entered pursuant to this Court's decision in *WMCA, Inc.* v. *Lomenzo,* 377 U. S. 633, which held New York's then-existing method of legislative apportionment violative of the Fourteenth Amendment. The District Court order provided by way of interim relief that (1) the November 1964 legislative elections could proceed under the invalidated apportionment system, but the legislators would be permitted to serve for only a one-year period, instead of the two-year term provided in the State Constitution; (2) a special November 1965 election must be held under a constitutionally valid apportionment plan to be enacted by the New York Legislature and submitted to the Dis-

---

[1] New York Laws 1964, c. 976. At the same time the Legislature passed three successive amendments to c. 976: New York Laws 1964, cc. 977–978 (Plan "B"), c. 979 (Plan "C"), and c. 981 (Plan "D"). These four acts have been referred to throughout the proceedings as Plans A, B, C, and D.

trict Court for approval not later than April 1, 1965 (later extended to May 5, 1965), the legislators so elected again to serve for only one year; and (3) the regularly scheduled November 1966 election, for a normal two-year term, would be held under the same or some other court-approved reapportionment plan. This Court summarily affirmed the District Court's order. *Hughes* v. *WMCA, Inc.,* 379 U. S. 694. Two dissenting Justices would have set the case for plenary consideration, and two concurring Justices expressly noted that the Court's action did not foreclose the District Court from modifying its interim order in light of subsequent developments.

In December 1964 the 1964 Legislature, meeting in special session, passed and the Governor signed four alternative reapportionment plans, one of which, "Plan A," is involved in the matter now before us. On January 26, 1965, the three-judge District Court found that "Plan A" satisfied federal constitutional requirements, but that each of the other plans did not.' 238 F. Supp. 916. On April 14, 1965, the New York Court of Appeals held all four plans invalid under the State Constitution, in that each provided for an Assembly of more than 150 members, thus exceeding the membership limit prescribed by the New York Constitution, Art. 3, § 2. *In re Orans,* 15 N. Y. 2d 339, 206 N. E. 2d 854.

Ignoring the New York Court of Appeals' holding that Plan A violated the State Constitution, a majority of the District Court, on May 18, 1965, ordered the November 1965 state legislative election to proceed under that plan. One judge dissented, considering that a more appropriate, though admittedly not wholly satisfactory, "interim" solution would be to permit the November 1965 election to go forward under the old reapportionment formula, with the legislators thus elected being accorded "weighted votes" in the legislature based on population.

On May 24, 1965, the State Legislature passed three bills, the substantial effects of which were (1) to adopt the dissenting district judge's weighted voting formula for the 1966 legislative session, without holding an election this fall; [2] (2) to create a bi-partisan commission to devise a new reapportionment formula for the 1966 election, meeting both federal and state constitutional requirements; [3] and (3) to issue a call for a constitutional convention to promulgate a permanent reapportionment plan to govern the 1968 and subsequent elections.[4] The Speaker of the Assembly and the President *pro tem* of the State Senate (the intervenors-appellants here) thereupon sought leave to intervene in the district court proceedings and to persuade the court to modify the interim relief in accordance with these legislative proposals. Their application for leave to intervene was granted, but the District Court refused to modify its earlier order. These applications for a stay and accelerated appeal followed immediately.

These matters bristle with difficult and important questions that touch the nerve centers of the sound operation of our federal and state judicial and political systems. They involve, among other things, the right of a federal court to order that one house of a state legislature shall temporarily be of greater size than is permitted by the State Constitution. Surely such questions are deserving of plenary consideration and reasoned explication. By denying a stay and refusing to accelerate this appeal, the Court, instead, has in effect decided them not only summarily but also *sub silentio*. For while the denial of a stay does not technically moot the appeal, it is manifest that such is the practical effect of the Court's action, since

---

[2] New York Assembly Intro. 6051, Print. 7067, vetoed by the Governor on May 27, 1965.

[3] New York Assembly Intro. 6050, Print. 7066, vetoed by the Governor on May 27, 1965.

[4] New York Assembly Intro. 5695, Print. 5988.

in normal course the appeal will not even be heard until after the presently ordered November election has taken place.

Without prejudging the question, the propriety of a federal court's ordering a state election to proceed under a plan which the highest court of the State has found to violate the State Constitution in respects not claimed to be violative of the Federal Constitution, when a number of alternatives are available, raises what I consider to be very serious federal questions which this Court should at least hear. All parties have shown themselves willing to argue the case promptly. I would set the case for immediate argument, and would have the Court render its decision on the stay promptly thereafter, with opinions on the merits of the controversy to follow in due course. Compare *Cooper* v. *Aaron,* 358 U. S. 1.[5]

I am wholly at a loss to understand the Court's casual way of disposing of this matter and I can find no considerations of any kind which justify it. The Court should be willing to face up articulately to these difficult problems which have followed as a not unnatural aftermath of its reapportionment decisions of last Term.

.

---

[5] The necessity for a prompt disposition is evidenced by the fact that the State's primary machinery must be set in motion today if an election next November is to take place.