**WMCA, INC., R. Peter Straus et al.,
Plaintiffs,
and
Anthony J. Travia and Joseph Zaretzki,
Plaintiffs-Intervenors,
v.
John P. LOMENZO, Secretary of State of
the State of New York, Louis J. Lefko-
witz, Attorney General of the State of
New York, et al., Defendants,
and
John H. Hughes and Lawrence M.
Rulison, Defendants-Intervenors.**

United States District Court
S. D. New York.

Heard July 13, 1965.

Order Filed July 13, 1965.

Judgment Affirmed Dec. 13, 1965.
See 86 S.Ct. 436.

Jack Weinstein, Mineola, N. Y., for Hon. Eugene H. Nickerson, Executive, Nassau County; Seymour S. Ross, Mineola, N. Y., of counsel.

Gordon Miller, County Atty., Westchester County, for Francis X. O'Rourke, Chairman, Board of Supervisors, Westchester County; Irving Libenson, Deputy County Atty., of counsel.

Robert B. Fleming, Buffalo, N. Y., for Messrs. Glinsky and Keenan.

Justin N. Feldman, Monroe Goldwater, New York City, for Democratic State Committee.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City; Simon H. Rifkind, Jay Greenfield, New York City, of counsel, for Hon. Anthony J. Travia and Hon. Joseph Zaretski.

Stephen G. Doig, Jr., New York City, for Rockland County, New York, as amicus curiae.

Robinson, Silverman, Pearce, Aronsohn & Sand, New York City, for plaintiffs; Leonard Sand, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen. of New York, for the State of New York; Orrin G. Judd, New York City, Sp. Counsel; Daniel M. Cohen, Donald Zimmerman, George Zuckerman, New York City, of counsel.

Mackenzie, Smith, Lewis, Michell & Hughes, Syracuse, N. Y., for intervening defendants John Hughes and Lawrence Rulison; Richard S. Scolaro, Syracuse, N. Y., of counsel.

Leo A. Larkin, Corp. Counsel of City of New York, for Board of Elections, President of City Council of City of New York; Morris Handel, George H. P. Dwight, New York City, of counsel.

Before WATERMAN, Circuit Judge, and RYAN and LEVET, District Judges.

WATERMAN, Circuit Judge: *

We have read the recent opinions of the judges of the New York Court of Appeals with great respect and with no little concern. We have great respect for the individual judges of that court as individual judges, and we share of course with the entire American judicature great respect for that court as a court.

We had thought that the order of this court of May 24, 1965, and the subsequent denial of a stay of this order by the United States Supreme Court, at last

---

\* This statement and the separate concurring statements that follow are verbatim transcripts of statements made in open court when the order appended hereto was read and filed.

As previous opinions of this and other courts in the New York reapportionment litigation appear in the West Reporter System, including the several opinions of July 9, 1965 of the judges of the New York Court of Appeals, see Glinski v. Lomenzo, 16 N.Y.2d 27, 261 N.Y.S. 2d 281, 209 N.E.2d 277, it seemed imperative that the order of the U. S. District Court of July 13, 1965 should also appear in the West Reporter System.

laid to rest all objections to this court's order mandating an election in the fall of 1965 of a new State Legislature to hold office for a term of one year.

We do note the statement of the chief judge of the New York Court of Appeals, however, that, and I quote, "Despite those illegalities of 'Plan A' under which a 1965 election is proposed to be held, we would of course be obliged to respect and follow the Federal courts' orders for such an election this year if those courts had made final and binding orders therefor."

We intended the order of this court of May 24, 1965, to be exactly such an order, so directing. We believe the order did expressly state such a judgment, but to remove any question as to its purpose, intent or wording, we are entering a further order containing mandatory and injunctive provisions.

RYAN, District Judge (concurring):

I concur with the statement now made by Judge Waterman.

LEVET, District Judge (concurring):

I concur with this statement.

I have heretofore expressed my opinion against the use of Plan A as the basis for the election to be held in November, 1965, although I have always approved of a 1965 election.* However, the majority of this court has directed and has ordered the use of that plan, Plan A, in this year's election of the members of the Legislature for the year 1966. The United States Supreme Court has refused to stay such election on such a basis.

The election machinery of this state, as has already been indicated here this morning, has been implemented to the use of Plan A for the 1965 election. A shift at this time would create endless confusion.

Accordingly, I concur at least in the result directed by the statement made hereby Judge Waterman, and I concur in the order which is this day made.

* Note: Judge Levet is referring to his dissent, expressed in open court on May 10,

*Order of Court of July 13, 1965*

Acting upon an application dated April 19, 1965 presented to us by the Attorney General of the State of New York, and after proceedings thereon in open court on May 10, 1965, and on May 24, 1965, this Court at the conclusion of the May 24, 1965 hearing filed in open court in the presence of counsel an order embodying the following mandates:

It is hereby ordered that:

"1. An election of members of the New York State Legislature shall be held on November 2, 1965, provided that the terms of the members so elected on that date or at any special election to fill vacancies, shall expire on December 31, 1966.

"2. Though the purported statute is itself presently ineffective, the scheme set forth in the Reapportionment Compliance Act, Chapter 976 of the Laws of 1964 [McK.Unconsol. Laws, § 2361 et seq.], together with such clerical corrections as have been certified to us by the Secretary of State pursuant to our order of May 10, 1965, in accord with the procedures set forth in § 403 of said ineffective Act, shall form the basis for the election of members of the New York State Legislature at the general election on November 2, 1965 and for any primary contest to nominate candidates for the Legislature or for any special election to fill vacancies prior to December 31, 1966. There is attached hereto and made a part hereof copies of the Act and the certified clerical corrections.

"3. Jurisdiction of further proceedings which may be found to be necessary in this Court is retained."

Notice of entry of this order was mailed to the attorneys for all parties on May 25, 1965, and on that day we denied an application filed on behalf of plaintiff-intervenors Anthony J. Travia

1965 and May 24, 1965. His position is set forth in an appendix hereto.

and Joseph Zaretzki for a stay pending appeal of the order. The Supreme Court of the United States on June 1, 1965, 381 U.S. 431, 85 S.Ct. 1582, 14 L.Ed.2d 480, one Justice dissenting, denied both a motion to accelerate the hearing of the appeal and a motion to stay our order pending appeal.

Despite the foregoing, on or about June 22, 1965, one Frank J. Glinski and one William F. Keenan filed a suit in the Supreme Court of the State of New York, Albany County, seeking, among other things, an order restraining the Secretary of the State of New York from taking any action in obedience to our May 24, 1965 order.

On July 5, 1965, a Justice of that Court granted that prayer, and on July 9, 1965, after the Appellate Division of the Supreme Court of the State of New York, Third Judicial Department, on July 7, 1965 had unanimously reversed the lower court, the New York Court of Appeals, 16 N.Y.2d 27, 261 N.Y.S.2d 281, 209 N.E.2d 277 reversed the Appellate Division, 24 A.D.2d 655, 261 N.Y.S.2d 280 and reinstated the Supreme Court Justice's injunctive order.

On July 9, 1965 application was then made to this Court for an order requiring Glinski and Keenan to show cause why they and all parties to this action should not be enjoined from interfering with the carrying out or execution of our order of May 24, 1965, and for other relief appropriate to effectuate said order, and

Now, after notice of said application, hearing thereon this day, and due deliberation:

It is hereby ordered that:

Frank J. Glinski, William F. Keenan, and all parties to this action, their agents, attorneys and servants, their successors and all other persons are hereby forever restrained and enjoined from interfering with the carrying out and execution by any and all New York State officers and election officials and their successors and all other persons of the order of this Court of May 24, 1965.

## APPENDIX

Although the three judge court was unanimous in approving the socalled Plan A, see 238 F.Supp. 916, later, after Judge Levy in the New York State Supreme Court held that Plan A did not comply with the New York State Constitution, and after the New York Court of Appeals affirmed Judge Levy's opinion, Judge Levet dissented from effectuating Plan A. He believed it better to order that at the election on November 2, 1965 the assemblymen and state senators be elected from the election districts of 1964 and that the members of the Legislature so elected should cast weighted votes equal to the proportion to the total citizen population of the state that the citizen population of their respective districts bears.

The opinion of Judge Levet rendered at the hearing on May 10, 1965 in which he disagreed with the designation of Plan A is hereto appended; and, following it, his further opinion rendered on May 24, 1965, in which he continued to object to the use of Plan A, is also appended.

## HEARING, MAY 10, 1965.

JUDGE LEVET: I am in accord with everything except that I do not agree with the designation of Plan A, either the unadulterated or the reformed version, and I shall state briefly why:

In March, 1962, the United States Supreme Court decided the basic case on reapportionment, Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663.

On January 11, 1962, this Court dismissed the complaint in W. M. C. A. v. Simon, D.C., 202 F.Supp. 741.

In June, 1962, the Supreme Court vacated that dismissal and remanded the case to the district court for further consideration in the light of Baker v. Carr. After remand this three-judge court again held that the New York State apportionment laws then existing were valid, W. M. C. A. v. Simon, D.C., 208 F.Supp. 368.

On June 15, 1964, the Supreme Court reversed W. M. C. A. v. Lomenzo, 377 U. S. 633, 84 S.Ct. 1418, 12 L.Ed.2d 568 and again remanded to the district court for further proceedings consistent with the Supreme Court's opinion in W. M. C. A. v. Lomenzo, supra, and Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506.

In Reynolds v. Sims the Supreme Court stated, I quote:

"[S]tate constitutional provisions should be deemed violative of the Federal Constitution only when validly asserted constitutional rights could not otherwise be protected and effectuated. Clearly, courts should attempt to accommodate the relief ordered to the apportionment provisions of state constitutions insofar as is possible." (p. 584, 84 S.Ct. p. 1393.)

At a special session of the Legislature held in December, 1964, four apportionment acts were passed, each of which provided for more than 150 members of the Assembly. These plans were denoted as Plans A, B, C and D.

On February 1, 1965, this Court held that Plans D, C and B were each invalid and that Plan A was valid, 238 F.Supp. 916.

However, in a proceeding entitled "In the Matter of the Petition of Jerome T. Orans," Honorable Matthew M. Levy, Justice of the Supreme Court, New York County, held that Plan A violated the provisions of the New York State Constitution with respect to the number in the Legislature that is in the Assembly. 45 Misc.2d 616, 257 N.Y.S.2d 839. This decision, of course, was affirmed in the Court of Appeals in an opinion written by Chief Judge Desmond dated April 14, 1965, 15 N.Y.2d 339, 206 N.E.2d 854, 258 N.Y.S.2d 825.

The time fixed by this court for the submission of a valid apportionment plan was April 1, 1965, by order of July 27, 1964. That was later extended to May 5th. On May 5, 1965, the joint legislative committee on reapportionment filed a tentative Assembly apportionment plan. No plan for the Senate apportionment was submitted, no bill has been submitted, no act has been passed.

The time now remaining before the primary elections is such that the procedures for 1965 election must commence on or about June 1, 1965.

Determination of district lines is necessary in order to permit a basis for designating petitions, revision and enrollment books, and so forth. This time fixed by this court has expired.

In spite of protestations by various parties concerned, no legally authorized plan has been enacted and it is apparent that none will be enacted by the required date.

In the papers presented to this court the plaintiffs advocate the appointment of a Special Master. The Attorney General recommends that the court temporarily utilize Plan A, which provides for 165 Assemblymen.

Now, in view of Reynolds v. Sims it is my opinion that recourse to Plan A is improper and I say that with due respect to the opinions of my brothers on this court, and I myself vote for another procedure, that is, weighted voting.

Weighted voting has been considered by numerous courts. I refer to a number of cases and I will not bore you with any readings from them.

I refer to one which is familiar to me and which is familiar also to Judge Waterman, American Federation of Musicians v. Wittstein, 379 U.S. 171, 85 S.Ct. 300, 13 L.Ed.2d 214 (1964).

I will read from Justice White's opinion in that case; and that was a case involving the vote at a national convention of musicians, where there were some 280,000 members represented, and I think delegates of some twelve to fourteen hundred.

There Mr. Justice White said, I quote:

"The pervading premise of both these titles is that there should be full and active participation by the rank and file in the affairs of the

union. We think our decision today that the vote of an elected delegate may reflect the size of his constituency is wholly consistent with that purpose."

Now weighted voting has been considered by various courts and has never been fully buried. It has been criticized but not convicted. In Asbury Park Press, Inc. v. Woolley, 33 N.J. 1, 161 A.2d 705, League of Nebraska Municipalities v. March, D.C. 209 F.Supp. 189, Maryland Committee for Fair Representation v. Tawes, 228 Md. 412, 180 A.2d 656, Thigpen v. Meyers, D.C., 231 F.Supp. 938, and to some extent Lucas v. Colorado General Assembly, 377 U.S. 713, 84 S. Ct. 1459, 12 L.Ed.2d 632.

It is my opinion that no interim plan should be based upon a form of legislative plan which violates the New York State Constitution. I am opposed to the use of Plan A.

I do not believe that this court should require a temporary use of a plan which is contrary to the state constitution and which has been so held by the highest court of this state.

Moreover, it seems to me that it is contrary to the general directions of the United States Supreme Court in the Reynolds v. Sims case which I quoted.

It is not necessary to change the number of the legislators in order to arrive at a solution of the basic apportionment demands of the Supreme Court decision. The use of weighted voting has been approved in certain courts, at least as a temporary solution.

Moreover, Nassau County has utilized a system of weighted voting without serious difficulty. See the article by Professor and County Attorney Jack B. Weinstein in 65 Columbia Law Review 20, page 44. There are also other quotations from the same article which seem to approve this as a stop-gap solution.

Now the formula is an easy one. It doesn't require any computers. It can be done by the simplest form of arithmetical equation. I did it myself, so it must be simple.

You simply have an equation which is as follows:

Population of the state as of 1960 over population of the district equals 150 over X. Solve that equation for X and you get the vote of this individual.

Now, as I say, this is a simple formula. It may be computed for each one of the 150. A chart may be prepared in the Legislature when the vote is counted. All they need to do is to add up the votes and it is there. This may be, to some extent at least, somewhat contrary to the state constitution but it doesn't violate any other arrangement in the state constitution. It isn't necessary to change the numbers, as I said, to secure this basic element which the Supreme Court has declared proper. And I believe personally that it is the only way of effectuating the decisions of the United States Supreme Court and I believe that no further delay should be permitted. I think that this is the proper solution.

I do not see how the Attorney General or anyone else can contend that the doctrine of judicial supremacy of the federal court can force the State of New York into what is apparently and has been held by the highest court of this state an unconstitutional provision, whereas a modification here going to the essential thrust of the Supreme Court decision is necessary and would be warranted under a temporary regime.

HEARING, MAY 24, 1965.

JUDGE LEVET: I must dissent.

I concur in part as has been indicated, with the majority opinion, first in the decision to require an election in 1965 for the year 1966; second, in the general determination not to continue the present distribution of legislative voting power, in other words, that an attempt must now be made to remedy the status heretofore declared by the Supreme Court in conflict with the 14th Amendment.

Third, I agree that there should be no election at large.

Fourth, I agree, at least at the present time, that there should be no special master appointed.

However, I respectfully disagree with the temporary remedy proposed by the majority of this court.

On May 10, 1965, I stated my reasons for dissent from the majority's directive for the use of Plan A for the year 1966. I recapitulate in brief, and I augment briefly:

First, Plan A has of course been declared unconstitutional as to the number of legislative membership. See the Orans case, decision by Chief Judge Desmond, 15 N.Y.2d 339, 206 N.E.2d 854, 258 N.Y. S.2d 825 (1965).

Second, Judge Matthew Levy indicated in his opinion that there was clear evidence of gerrymandering in that plan. See In Re Orans' Petition, 45 Misc.2d 616, 257 N.Y.S.2d 839 (1965).

Thirdly, to correct a legislature of an improperly based membership is unwise, since adoption will create future difficulties of expansion and contraction and might leave a void for the 1965 election.

It is my opinion that the 14th Amendment gives no possible power, no basis for this court to suspend the valid provisions of the State Constitution unless directly necessary to obtain the results demanded by the governing decision by the Supreme Court affecting legislative apportionment in this state.

Whether the Federal Courts should mould their decrees in equity so that the constitutional provisions of the State of New York with respect to composition, not the apportionment of districts, shall be observed is the issue presented to this court. Even the temporary adoption of Plan A by order of this court violates what I believe to be a basic principal governing the relationship of states and nation under our Federal Constitution.

Moreover, equitable remedies are limited to the relief required and should be tailored to necessity rather than to convenience.

I thus dissent to the remedy provided. I adhere to my vote for weighted voting of legislators elected under the present district which have been approved heretofore, both in the Assembly and in the Senate.

No firm determination is now possible in order to secure any adjudication of any revision of the districts at a time soon enough for the election procedures of a 1965 election. Voting for the 150 Assemblymen and some 50-odd Senators at large is confusing and impractical. Retention of the present voting power would be unwarranted and illegal.

The use of weighted voting as I described it, and apparently in general, at least, without approving the exact details —my statements are somewhat academic along this line by now—has some disadvantages, but it is the lesser of the evils.

Weighted voting by committee members is unnecessary, since the real test is the final enacting vote.

Now, we have here today, and I wish to thank them, the two representatives from the universities, one a political science teacher from the University of Rochester and the other a member, I believe, or editor of the Columbia Law Review, whose material we have received here.

The first article, which is from the Rutgers Law Review, was written by John F. Banzhaf III and was submitted here to us.

Now, the principal arguments of this are twofold. One, it is said that districts with small voting power cannot defeat bills supported by those with large voting power. I assume that that was one of the purposes of the decision in Washington, W. M. C. A. v. Lomenzo.

Secondly, it is asserted that one representative with, say, three votes or 2.9, whatever it is, will not split his vote.

Now, with due respect to the academic world, I wonder whether they have ever heard of caucus votes.

Now, the other article, written by Professor Riker of the University of Rochester, contains a technical discussion with

all sorts of formulae to illustrate possible but not probable or likely defects of this method. The statement is made that one of the plans submitted by the Legislature carried fractional voting or weighted voting, whichever term was used, and to compare that with the proposed plan is not sound. That plan, as I recall the legislative enactments, provided for one-sixth vote for the least populated districts, such as Schuyler County. Obviously, if there is a county with a certain population and another county with a population of 21 times that, there is no basic reason why the more populous county should not have the more effective vote.

That again, I say, is one of the purposes of the decision of the Supreme Court.

All in all, then, I do not believe that the possible constitutional invalidity of this method is important. I think that to adopt Plan A and to reject this is to strain at a gnat and swallow a camel.

The collision involved between Plan A and the Constitution of the state is clearcut. It is in effect determining the number of the legislators of this state. On the other hand, the collision between this weighted system and the State Constitution obviously must be accepted if there is a direction for it, because it does not, unlike Plan A, result in the Federal Government dictating a term of a temporary state constitutional organization.

Now, I say this without intending to be cynical and without intending to be critical and with some degree of, shall I say, distant knowledge about politics. We have here what some people might have called what Judge Frankfurter called a political thicket.

There is nothing wrong with politics. Politics is a means by which the wishes of the people of a state or any unit are validly effectuated and without any indication of what the present situation means from that standpoint, I note the attempts, at least, even though they may be belated, to do something about this, and I believe that the emergence from this condition which faces this state can only be remedied with the cooperative statesmanship of the leaders of the State Legislature.

I therefore dissent as to the remedy.

I vote to oppose, at least, the adoption of any Plan A, and assert, since there is no other present remedy proposed, to adopt the method I have suggested.