Robert G. Main, J.
At the general election which took place in the month of November in the year 1965, the electorate of the County of Schenectady, New York, adopted a County Charter which provides for a County Manager form of government. The charter was adopted pursuant to section 33 of the Municipal Home Rule Law and during the months preceding the election, there were public hearings, information sessions and much publicity given to the new plan of government.
The charter provides that there shall be a County Board of Representatives of 15 members to be elected from four districts *462 into which the county is to he divided for the purpose. All parties to this action agree that the districting plan will result in a fair and constitutional apportionment of the representation of the electorate upon the new Board of Representatives. The charter states that the Board of Representatives shall appoint a County Manager who in turn shall, subject to the approval of the Board of Representatives, appoint certain other county officials. The charter also states that it is to take effect on January 1, 1966.
Because the proposed charter was submitted to the voters at the same election at which members of the Board of Supervisors were elected for a term of two years and because the proponents of the new plan of government could not know in advance that the voters would accept the charter, there was an obvious problem respecting the continuity of the county government.
The charter provides that the first members of the new Board of Representatives shall be elected at the general election in the year 1967, to take office on January 1, 1968 at which time the terms of office of the Supervisors elected in 1965 will have expired.
.Section 22.00 of the charter reads as follows: “ This charter shall, upon approval by referendum in the manner provided by law, become effective as of January 1, 1966, except that the provisions of article II of this charter relating to the election of the board of representatives shall become effective with the general election of 1967.”
Section 22.03 of the charter reads as follows: “All existing state, county, local and other laws or enactments having the force of law shall continue in force until lawfully amended, modified, superseded or repealed, either by this charter or an enactment adopted subsequent to its effective date. Any proceedings or other business undertaken or commenced prior to the effective date of this charter may be conducted and completed by the county officer or administrative unit responsible therefor under this charter or the administrative code.”
Immediately then, on January 1,1966, a question of the meaning of the terms of the charter was evident. Does the charter intend that all matters relating to the new form of government should be held in abeyance until the new Board of Representatives shall come into being on January 1, 1968, or, on the other hand, do the terms of the charter mean that the County Manager form of government should commence on January 1, 1966 and that in the years 1966 and 1967 the Board of Supervisors, the only governing body of the county, should exercise, to some *463 extent at least, the powers of the Board of Representatives, including the appointment of a County Manager?
It is not difficult to interpret the provisions of the charter as saying, implicitly if not expressly, that the Board of Supervisors should exercise the powers of the Board of Representatives during the interim period and until January 1, 1968. If this is not the intention of the charter, then the statement in section 22.00 thereof that the charter take effect on January 1, 1966 would be completely without meaning. Such an interpretation of the terms of the charter, giving the Board of Supervisors power to act and to appoint a County Manager during the interim period would represent a sensible and pragmatic solution to the problem of continuity of government and doubtless would not have been objected to by anyone if it were not for the fact that the representation of the electorate of the county upon the Board of Supervisors is so grossly out of proportion as to render the Board of Supervisors, as presently constituted, to be unconstitutional and contrary to the judicially mandated principle of one person, one vote. (Gray v. Sanders, 372 U. S. 368; Reynolds v. Sims, 377 U. S. 533; WMCA v. Lomenzo, 377 U. S. 633.) The inequality of representation upon the present Board of Supervisors is adequately proven by the undisputed population figures of the towns and wards. We need cite only four such figures. As of the year 1960, the population of the Town of Rotterdam was 27,493; of the Town of Grlenville 25,707; of the Town of Princetown 913 and that of the fourth ward in the City of Schenectady 1,041. As the present Board of Supervisors is constituted, each of the above political subdivisions has one Supervisor and one vote in the management of the county affairs.
Following its organization on January 1, 1966, the Board of Supervisors, evidently believing that it had been given authority to do so by the new charter, created the office or purported to create the office of County Manager and appointed defendant, Theodore Birbilis, County Manager and he has, in turn, appointed certain other county officials or employees with the consent of the Board of Supervisors.
After the appointment of Mr. Birbilis as County Manager, II. Edward Michl, styling himself a taxpayer of the county, brought the present action. The defendants are the members of the Board of Supervisors, the County Manager, Mr. Birbilis, the County Treasurer, Mr. Williams, the Clerk of the Board of Supervisors, Mr. Pacelli, and the county itself.
*464 The complaint asks for certain relief and for a declaratory judgment and the demands have been increased in number by the affidavit in support of summary judgment and these demands are now for a declaratory judgment as follows:
“ (1) Declare the rights and other legal relations of the parties in respect of the premises, as provided in Section 3001 and otherwise of the Civil Practice Law and Buies.
" (2) Declare that Besolution No. 2 of the Schenectady County Board of Supervisors is unconstitutional, ineffective, null and void and to be illegal, inoperative and to have no force or effect.
“ (3) Declare that the Board of Supervisors shall function pursuant to Section 150 and other pertinent sections of articles IV and V, respectively, of the County Law, exercising only those powers and duties conferred upon them pursuant to said law, and that it be enjoined from exercising those powers and duties of and acting as a Board of Bepresentatives.
“ (4) Declare that the appointment of the County Manager, Theodore Birbilis and all appointments made by him subsequent thereto be declared illegal and void, and enjoining him and all those acting under him from performing and/or acting in their respective capacities.
“ (5) Declare that the Board of Supervisors correct the apportionment scheme as set forth in the Schenectady County Charter, and amend the districts embodying the city wards without altering said wards, and to apportion the said County in accordance with the constitutional provisions applicable thereto.
“ (6) Declare that a general election for the election of members to the County Board of Bepresentatives be held in the ensuing general elections of 1966, and that said Bepresentatives be elected from constitutionally apportioned County districts.
“ (7) Declare that the present terms of the members of the Board of Supervisors terminate on December 31, 1966, and that the respective Town Supervisors terms as town officers are not affected or impaired thereby.
“ (8) Declare that the Schenectady County Charter take effect on January 1, 1967 after the election of Supervisors elected in the manner as set forth in said Charter, and from constitutionally apportioned districts.
“ (9) Declare that Mario Paeelli, as Clerk of the Board of Supervisors, be restrained and enjoined from certifying and submitting payrolls containing the names of the said Theodore Birbilis and any and all persons appointed by the said Theodore Birbilis and that Bobert W. Williams be restrained and enjoined *465 from issuing County checks to the aforesaid Theodore Birbilis and any and all persons appointed by the said Theodore Birbilis.
“ (10) Declare that section 150 of the County Law, section 29, subdivision 14, and section 41 subdivision 7, respectively of the Town Law in respect to their application to Schenectady County as presently apportioned, be declared unconstitutional.
“ (11) Declare that the plaintiff have such other and further and different relief as may be just and proper, together with the costs of this action.”
The defendants have filed an answer to the complaint. The plaintiff moved for summary judgment and at the hearing of the motion for summary judgment on the 26th day of April, 1966, the defendants, in open court, moved for summary judgment in their favor.
Upon consideration of the pleadings, the affidavits and exhibits submitted, we conclude that no substantial question of fact exists and that plaintiff is entitled to some but not to all of the relief requested.
There is no question whatever that the present Board of Supervisors is so unfairly constituted that it cannot be allowed to continue as the governing body of the County of Schenectady until January 1, 1968. At this point in a judicial decision relating to apportionment, it would be usual to direct the Board of Supervisors to submit a plan for apportionment within a specified time. In the case now before us, however, such a direction is unnecessary. We have a plan ready made. The work has been done and the study has been completed. It only remains to implement the schemes set forth in the County Charter sooner than is therein provided. The judgment to follow this decision will provide that there be elected at the general elections in November, 1966, 15 representatives who shall be elected from the districts provided in and in the manner provided for in the charter and who shall serve for one year and shall constitute the members of the County Board of Representatives and be the governing body of the County of Schenectady for the period from January 1, 1967 to December 31, 1967 when the Board of Representatives to be elected in the Fall of 1967 will take office. The terms of office of the present Board of Supervisors, insofar as they are members of the governing body of the County of Schenectady, shall terminate December 31, 1966. The duties and authority of the Supervisors who are Supervisors of towns in the county, insofar as they are officers of their respective towns, may continue until the expiration of the terms for which they have been elected.
*466 Inasmuch as we have now decided that plaintiff is entitled to a judgment declaring that the present Board of Supervisors is so grossly unrepresentative of the electorate as to be unconstitutional and that the complaint, coupled with the affidavits submitted by the plaintiff, is broad enough and our practice under the CPLR liberal enough to read into the complaint a demand for an accelerated election, we then pass to a consideration of the other demands made by plaintiff.
Does it follow from the foregoing that the court should now and in this action declare that the appointment of Mr. Birbilis to the position of County Manager is illegal and void and that, as corollaries, his appointment of certain other officials should be declared illegal and that the County Treasurer be restrained from paying them and Mr. Birbilis? We do not think that such declaration should be made in this action.
While we agree with plaintiff’s argument that the County Law gives the Board of Supervisors no authority as such to create the office of County Manager nor to appoint one, nevertheless, there can be no doubt that the electorate of the county could do these things by adopting a County Manager form of government. As we have previously indicated, it would not be difficult to read into the charter at least the implied intention that the Board of Supervisors proceed to make such an appointment and we feel that no objection to such procedure would have been voiced by anyone if the board had been constitutionally organized.
Since the promulgation of the one man, one vote principle, as applying to the States and their subdivisions, many legislative bodies, including our own New York State Legislature, have been ordered to apportion, Consider the chaos which would result, if all of the previous acts of these bodies should be declared unconstitutional. Government cannot exist in a vacuum and it is a function of the court, whenever possible, to build and not to destroy. Furthermore, it can be said without fear of contradiction that if Mr. Birbilis should continue as 'County Manager, at least until January 1, 1967, that there will be less government by an illegally apportioned board than would be the ease if the Supervisors continued to make day by day decisions for the county. We repeat that at the time of the submission of the County Charter to the voters, some interim period was necessary during which the board elected at the same time would be the only governing body of the county and we think that the charter intended to take this fact into consideration. There is also a question of procedure as to whether these officials, if they are to be removed, should be removed *467 by means of a declaratory judgment of this kind or by a proceeding in the nature of quo warranto.
The plaintiff has requested, in paragraph “Five” of the affidavit in support of the motion, that the Board of Supervisors be directed to correct the apportionment scheme as set forth in the Schenectady County Charter (see § 2.03) and amend the districts embodying the city wards, without altering the boundaries of said wards. Plaintiff contends that the County Charter cannot alter the boundaries of city wards. We agree that the county does not have the power to change the boundaries of city wards insofar as they are governmental or administrative subdivisions of the city. However, we see no reason whatever why the County Charter, in establishing a fair division of the county into districts for the sole purpose of county representation upon the new Board of Representatives, cannot use city wards or parts thereof and we see nothing here which needs correction.
The defendants have raised the point that since this is a taxpayer’s action, the plaintiff in commencing the same should have filed a bond. While this action is couched in the terms of a taxpayer’s action, it is not one of the ordinary kind. It is, in part at least, an action to secure civil rights and no bond should be required. This is especially so in view of the fact that so far as this decision is concerned, plaintiff has not succeeded in obtaining an injunction against paying the County Manager and his appointees, as requested, nor in securing their removal from office.
The plaintiff may submit an order for summary judgment in accordance with the foregoing.
The other demands and requests made by plaintiff are not granted and in view of the fact that plaintiff and the defendants in this action have each succeeded to a limited extent, costs should be allowed to neither party.