Harold P. Kelly, J.
This is a proceeding brought pursuant to orders to show cause granted to the plaintiffs and to the defendants, Town of Cheektowaga and Town of Collins, which were returnable before this court on September 26, 1966, to determine the constitutionality of Local Law No. 6 of the Local Laws of 1966 of the County of Erie which was adopted by the Board of Supervisors on August 16, 1966, and approved by the County Executive after a hearing held on August 30, 1966. The said Local Law, filed with this court on September 8, 1966, was enacted pursuant to an order of this court as modified by the order of the Court of Appeals by its decision dated July 7, 1966 (18 N Y 2d 672). The order of this court as modified directed that the Board of Supervisors prepare a permanent plan of redistricting based upon the population census of Erie County, which was completed in May, 1966. It also was directed that objections to the said plan of redistricting be filed with the court and served on the interested parties on or before September 8, 1966. Objections to the said plan were filed by the plaintiffs and by the defendants, Town of Cheektowaga and Town of Collins, on that date. Hearings were held on October 3, 1966 and on October 5, 1966.
The plaintiffs sought to have Local Law No. 6 of the Local Laws of 1966 disapproved, claiming that it is illegal and unconstitutional on the ground that it constitutes racial gerrymandering and on the further ground that it constitutes partisan political gerrymandering. Both the Town of Cheektowaga and Town of Collins sought to have it declared unconstitutional on the ground that it constitutes a partisan political gerrymandering. The claim that it is illegal and unconstitutional on the grounds that it constitutes racial gerrymandering was withdrawn by the plaintiffs after counsel for all the parties stated in open court that they were satisfied that the facts did not warrant the continuance or pressing of this objection.
*944 No objections were raised by parties who had previously appeared, namely, City of Lackawanna, Town of Holland, Town of Wales, Town of Tonawanda and Town of Amherst. There were no objections raised by the other towns in the County of Erie or other defendants to the proceeding which did not appear and participate heretofore.
The sole question before the court in this proceeding is to determine whether Local Law No. 6 of the Local Laws of 1966 meets constitutional requirements. It is not the intent or purpose of the court to legislate, nor is it within its power to do so. (Burns v. Richardson, 384 U. S. 73, 84-85.) “ Our decision in Reynolds v. Sims [377 U. S. 533] emphasized that ‘ legislative reapportionment is primarily a matter for legislative consideration and determination, and that judicial relief becomes appropriate only when a legislature fails to reapportion according to federal constitutional requisites in a timely fashion after having had an adequate opportunity to do so. ’ 377 U. S., at 586. Until this point is reached, a State’s freedom of choice to devise substitutes for an apportionment plan found unconstitutional, either as a whole or in part, should not be restricted beyond the clear commands of the Equal Protection Clause.”
The burden of proof of establishing that the proposed reapportionment is unconstitutional is upon the persons asserting it. (Matter of Richardson [Stark], 307 N. Y. 269, 273.) “ The burden of establishing that the reapportionment accomplished by the respondents is unconstitutional rests upon the petitioners-appellants who are the parties asserting its unconstitutionality. ’ ’
The redistricting plan before the court provides for a County Legislature consisting of 40 members, two of whom would be elected from each of 20 legislative districts for staggered terms of four years each. The average population of the legislative districts is 54,330, with a deviation therefrom of 3% plus or minus. City, village, town, ward and election district boundaries, streets and natural boundaries such as rivers and creeks have been used to delineate the various districts. In only two instances have election district boundaries not been followed.
It is a natural consequence to any plan of reapportionment in following the constitutional dictate of one man, one vote that there will be some disruption of prior political district lines and necessitate the crossing of ward, town or city boundary lines.
It is interesting to note that in the plans offered in evidence by the defendant Town of Collins, being Exhibits 2 and 3, it was found necessary to cross ward, city and town boundaries to bring about plans that would meet with the one man, one *945 vote test of constitutionality. It also appears from those exhibits that the districts were irregular and could not be deemed to be compact.
The lines of the districts provided for in any plan must necessarily be altered from time to time as population shifts within the county become apparent. Census figures as they become available should be reviewed as they relate to the districts as now proposed.
It was claimed by those objecting to the plan that it favored the Republicans in 12 districts by an average majority of affiliations of 5,580 as opposed to 8 Democrat districts by an average majority of affiliations of 9,849, and because of this are safe districts for the respective parties.
Variances in affiliations must be expected as it is a practical impossibility to have them evenly balanced. The variations herein are not such as they could be termed invidious.
The number of votes cast for the various Republican, Democrat or other party candidates in any particular year is of little importance in determining whether Local Law No. 6 of the Local Laws of 1966 is a valid constitutional plan. There are many factors which enter into the voting pattern of the people such as National, State and local issues, economic conditions, National emergencies such as wars, movement of the people from the cities to the suburbs, and the popularity and the personality of candidates. These factors are also important insofar as affiliations are concerned in that they also vary from year to year.
It was the position of the City of Buffalo that districts within the city must be entirely within the city and that the boundaries of such districts must be determined by the Common Council. Some of the sections of the City Charter and of the Municipal Home Rule Law that are cited by the City of Buffalo in its brief were enacted prior to the United States Supreme Court decisions that require local legislative bodies to be composed in such a manner as to give effect to the “ one person, one vote ” rule. These sections were drawn in order to give specific representation to the local subdivisions of the county, such as to cities and towns and without consideration to the above constitutional requirement.
Baldwins. City of Buffalo (6 N Y 2d 168 [1959]) was decided at a time when this theory of representation on the Board of Supervisors by political subdivisions was not only considered important but somewhat controlling.
This court has declared section 150 of the County Law and section 201 of the County Charter unconstitutional, insofar *946 as they mandated the former apportionment of the Erie C'onnty Board of Supervisors (see 18 N Y 2d 672). These sections, along with section 11 of the Municipal Home Rule Law and others, placed the emphasis on representation by place and not people. So wherever these sections would conflict with the principle of one man, one vote, they by inference would be unconstitutional in their requirement to give representation by political subdivision rather than people. An examination of the evidence leaves the court to the conclusion that it would be almost impossible to draw a workable plan that would give all cities, towns and wards as now constituted unit representation in the county legislative body. For example:
Section 11 of the Municipal Home Rule Law (subd. 1, par. d) would require in excess of 400 county representatives on the county legislative body in order to give effect to this section. Most certainly no law should be followed that would bring about that result.
It should be pointed out that Baldwin v. City of Buffalo (6 N Y 2d 168, supra) held that the City Council had a very limited right to change boundary lines of the city wards, but did not attempt to change the right of a County Board of Supervisors to define the number, mode of selection, terms of office of county legislators, as now embodied in section 10 (subd. 1, par [ii], cl. a, subd. [1]) of the Municipal Home Rule Law.
A reading of all of the sections of the Municipal Home Rule Law leads to the conclusion that the power to reapportion and to set the boundary lines for the county legislative body is in the hands of the County Board of Supervisors.
In Michl v. Shanklin (50 Misc 2d 460, 467) the right of the County Charter to alter the boundaries of city wards was raised and the court stated: “We agree that the county does not have the power to change the boundaries of city wards insofar as they are governmental or administrative subdivisions of the city. However, we see no reason whatever why the County Charter, in establishing a fair division of the county into districts for the sole purpose of county representation upon the new Board of Representatives, cannot use city wards or parts thereof This case was affirmed by both the Appellate Division (25 A D 2d 925) and the Court of Appeals (17 N Y 2d 906, modfg. 25 A D 2d 925) without reversal of this holding.
It appears from the testimony and the exhibits before the court that the districts are contiguous and in as compact form as practicable and are enclosed within boundaries which are natural, well-known and convenient to the people residing therein as far as practicable. (Matter of Richardson [Stark], *947 307 N. Y. 269, 274, supra.) It further appears that the number of residents, as reflected by the 1966 Census, are sufficiently equal in each district to meet the constitutional requirement. It also appears that the multimember districts provided do not constitute invidious discrimination nor does the variance in political affiliations constitute political or partisan discrimination.
From the figures presented to the court it is apparent that the electorate in the County of Erie and the political subdivisions thereof have been selective in the past and will probably continue to be so in the future. In many instances Democrats have been elected to office from districts which have a substantial majority of Republicans in affiliation and in many instances Republicans have been elected from districts which have a substantial majority of Democrats.
The law is quite clear that the number of members on the county legislative body, or the number of districts that comprise the county, or the length of the term of office, or whether there shall be one or more members from each district, is a legislative function that is within the discretion of the County Board of Supervisors subject only to a review by the courts of any plan passed by the Board of Supervisors to determine if the plan is constitutional and within the one-man, one-vote rule.
The evidence in the record shows that the proposed plan of redistricting is not invidious. The court cannot speculate or rely on conjecture. (Burns v. Richardson, 384 U. S. 73, 88-89, supra.)
" But the demonstration that a particular multi-member scheme effects an invidious result must appear from evidence in the record. Cf. McGowan v. Maryland, 366 U. S. 420. That demonstration was not made here. In relying on conjecture as to the effects of multi-member districting rather than demonstrated fact, the court acted in a manner more appropriate to the body responsible for drawing up the districting plan. Speculations do not supply evidence that the multi-member districting was designed to have or had the invidious effect necessary to a judgment of the unconstitutionality of the districting. Indeed, while it would have been better had the court not insisted that the legislature justify ’ its proposal, except insofar as it thus reserved to itself the ultimate decision of constitutionality vel non, the legislature did assign reasons for its choice. Once the District Court had decided, properly, not to impose its own senate apportionment but to allow the legislature to frame one, such judgments were exclusively for the legislature to make. They were subject to constitutional challenge only upon a demonstration that the interim apportionment, although made on a proper population basis, was designed to or would operate *948 to minimize or cancel out the voting strength of racial or political elements of the voting population.”
Local Law No. 6 of the Local Laws of 1966 of the County of Erie is hereby approved, as it is constitutional and it provides equal protection under the provisions of the Fourteenth Amendment of the United States Constitution and sections 1 and 11 of article I of the New York State Constitution. The court further finds that Local Law No. 6 is not illegal and unconstitutional on the ground that it constitutes partisan and political gerrymandering.
The Board of Supervisors are directed to submit the redistricting plan embodied in said Local Law No. 6 to the electorate of the County of Erie at the general election of November 8, 1966, and if approved at that time the same shall become effective in accordance with its terms on January 1, 1968.