**R. M. LONG et al., Plaintiffs,**

v.

**Robert B. DOCKING, Governor et al., Defendants.**

**Civ. A. No. W–3220.**

United States District Court
D. Kansas.

Feb. 23, 1968.

Ralph E. Gilchrist, Wichita, Kan., Thomas M. Van Cleave, Jr., Kansas City, Kan., for plaintiffs.

Robert C. Londerholm, Atty. Gen., State of Kansas, Richard J. Froth, Asst. Atty. Gen., State of Kansas, Topeka, Kan., for defendants.

Before HILL, Circuit Judge, and BROWN and TEMPLAR, District Judges.

PER CURIAM.

In its opinion filed December 28, 1965, 251 F.Supp. 541, 549, this Court held that Chapter 1, Laws of Kansas, Special Session of 1964 was invalid because under the admitted and stipulated facts, including the population statistics of Kansas, there existed inequality of apportionment in the Kansas State Senate not constitutionally permissible under the equal protection clause of the Fourteenth Amendment to the United States Constitution. The Court found that the apportionment statute gave voters in one senatorial district approximately thirty per cent more voting strength in electing their senator than voters in another district, violating the concept of "one man, one vote."

At that time injunctive relief was withheld and the effective date of the Court's decree was stayed until April 1, 1966. The Court retained jurisdiction to consider and grant any further relief that might be justified or required as the

facts and circumstances then existing might require.

Thereafter, on February 23, 1966, the Court filed a supplemental opinion and for sufficient reasons extended the effective date of the Court's order until April 1, 1968. The Court retained jurisdiction of the case and directed that in the event a valid reapportionment plan of the State Senate is not adopted by the Kansas Legislature prior to April 1, 1968, it will enter such orders as it deems appropriate, including, if necessary, an order for a valid reapportionment plan or an order directing that its members be elected at large pending a valid reapportionment by the state itself.

The Kansas Legislature has now, during its 1968 Session, enacted Senate Bill 495 which is before us on the joint motion of the plaintiffs and the defendants in which they request this Court to review and determine the validity of Senate Bill 495 in accordance with the jurisdiction retained by this Court in its opinion and decree previously entered.

The Legislative Apportionment Act submitted for our consideration undertakes to divide the state into forty separate senatorial districts. No evidence has been submitted which might disclose the different factors or guidelines considered by the Legislature in arriving at the basis for making the apportionment set forth in this law. The defendants simply contend that the variance in population between the largest district and the smallest district is small enough to meet the requirements that each citizen has an equally effective choice in the election of members of the State Legislature.

The general principles that must guide us in determining whether or not Senate Bill 495 enacted by the 1968 Session of the Kansas Legislature is constitutionally permissive are to be found in seven cases decided by the Supreme Court. Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506; WMCA, Inc. v. Lomenzo, 377 U.S. 633, 84 S.Ct. 1418, 12 L.Ed.2d 568; Maryland Committee for Fair Representation v. Tawes, 377 U.S. 656, 84 S.Ct. 1429, 12 L.Ed.2d 595; Davis v. Mann, 377 U.S. 678, 84 S.Ct. 1441, 12 L.Ed.2d 609; Roman v. Sincock, 377 U.S. 695, 84 S.Ct. 1449, 12 L.Ed.2d 620; Lucas v. Forty-Fourth General Assembly, etc., 377 U.S. 713, 84 S.Ct. 1459, 12 L.Ed.2d 632; and Swann v. Adams, 385 U.S. 440, 87 S.Ct. 569, 17 L.Ed.2d 501.

■ We do not insist that the "one man-one vote" doctrine contemplates that a state legislative body shall apportion the state senatorial districts so that all of such districts must be *exactly* equal in population. But, as we have heretofore determined, where "county lines were ignored in a sufficient number of instances to such an extent that the plan or pattern manifested an intention to disregard them," then under a plan of reapportionment which ignores political subdivision lines, it is not permissible to deviate from the equal population *principle* in either or both Houses of a State Legislature. Long v. Avery, D.C., 251 F.Supp. 541, 553.

■■ We reiterate, population is the essential element in reapportioning but other factors such as "integrity of political subdivisions, the maintenance of compactness and contiguity in legislative districts or the recognition of natural or historical boundary lines," may be considered. Swann v. Adams, 385 U.S. 440, 87 S.Ct. 569, 17 L.Ed.2d 501. The county unit of government in Kansas is the ideal unit in the formation of the senatorial districts. Each county is a compact and contiguous area. The county is, in fact, the foundation of our political system in Kansas. The election machinery of the state is generally set up on a county basis. The political thoughts of the people begin with the election of county officials. The court house in each county is the hub of the political activity spreading out in all di-

rections to the county boundary lines. These traditional facts make it necessary, in Kansas, to give consideration, along with population, to county boundary lines. With few exceptions, we believe there is no necessity to ignore county boundaries.

Evidence before us discloses that based on the 1967 annual census of the State Board of Agriculture, the state population in Kansas in 1967 was 2,236,750. Fifty-five thousand nine hundred and nineteen times forty (the number of senatorial districts) equals 2,236,760.

An examination of Senate Bill 495 and Exhibit "B," a map which shows the lines drawn by the Bill as it applies to the cities, counties, townships and precincts included in the various senatorial districts, and reveals that for the most part and except in the western part of the state where population is relatively sparse, little consideration was given to the location of county lines insofar as they affected the senatorial districts. It was the apparent policy of the Legislature, when fixing senatorial district boundaries in the more densely populated areas of the state, to use precincts as the units on which to construct the districts. In some instances this cannot be entirely avoided, but where, as here, such a policy is adopted and followed, then the variation of population as exists under Senate Bill 495 should be much less than it is.

There is no evidence before us which offers any explanation or supports the population variations which admittedly exist. The defendants simply contend that the difference of 5,070 voters which exist between the largest district, No. 16, which has 58,516, and District No. 10, the smallest, which has 53,449, does not exceed permissible limits of variance.

The variance between District No. 16 and District No. 10 amounts to approximately 9%. Respondents urge that a much wider variance has been sustained by courts which have considered the constitutionality of reapportionment in other states.

■ Consistent with the guidelines we have previously announced, substantial, equal legislative representation must be the base considered, but political subdivisions may be accorded some independent representation in at least one House so long as the basic standard of equality of population among districts is reasonably maintained. We have said that mathematical exactness is not a workable constitutional requirement, for there may be present an element resting upon the integrity of political subdivisions and other legitimate considerations incident to the effectuation of a rational state policy. But here, where there is evidence that integrity of political subdivisions was substantially disregarded and no other legitimate consideration appears to justify a ratio between the largest and the smallest district under Senate Bill 495 of 1:09:1, or a variance of approximately 9% (58,516 to 53,449) exists, we are compelled to hold that the apportionment provided by this Bill fails to satisfy the "nearly equal as practicable rule."

There is no mathematical formula for equality in these cases but in instances where a policy is followed under which the districts are constructed out of units smaller than counties in creating the districts, then there appears to be no reason why a much smaller variance in the population of the districts may not be achieved.

We do not say that the integrity of political subdivisions, i. e., county lines, may never be violated, for obviously, to achieve a reasonable balance between districts in heavily populated urban areas may require some rational adjustments in a few instances. We do say that if we are to sustain variations of the significance found in Senate Bill 495, there must be some evidence to sustain and justify the variance. Evidence could consist of a declared policy to follow, within

the limits of reason and feasibility, the context of county boundaries and county population figures. The execution of such a policy by the enactment of an apportionment statute, based upon the consideration set out in this and the Court's earlier opinions, could be sustained.

In apportioning the more populous areas of the state if those counties are unnecessarily divided, the purpose of constitutional apportionment is thwarted by the dilution of the political power of those counties.

We reiterate that the problem of legislative apportionment is primarily a matter for legislative consideration and the responsibility for enacting a constitutionally permissible redistricting plan rests upon the Legislature of Kansas. Though the task may be fraught with difficulties, certainly it is not an impossible one. We are convinced that a conscientious effort, motivated by a desire to satisfy the requirements of the Federal and State Constitutions, will rest in the formulation of State Senatorial Districts which will comport with the demands of the Constitution of the United States and the Constitution of Kansas.

We are hopeful that all appropriate steps will be promptly taken by all responsible persons to the end that a constitutionally valid redistricting plan be presented to this Court in order that it be not required to take further action in this case. Should it appear that further action is necessary by the Court, we shall, as we must, and on our own motion, direct further appropriate proceedings.

For the reasons herein set forth, we now find and determine that Senate Bill 495 enacted by the 1968 Session of the Kansas Legislature and which has been presented by the parties' pending motion to review the same, does not meet constitutional requirements.

■ We take judicial notice of the fact that since the institution of this proceeding, Honorable Robert B. Docking has succeeded defendant Honorable William H. Avery as Governor of the State of Kansas, and, therefore, we now order and direct that Robert B. Docking be substituted as a party-defendant in place of William H. Avery, without prejudice or delay to these proceedings.

It is, therefore, on this 23rd day of February, 1968,

Ordered that upon consideration of the motion filed by the parties to this action and the evidence submitted, that Senate Bill 495 enacted by the Kansas Legislature, Session of 1968, for the reasons herein set forth, is declared constitutionally invalid; it is further

Ordered that the judgment and decision of this Court entered December 28, 1965, and supplemented by the judgment and order entered February 23, 1966, remain in full force and effect, subject to future appropriate modification; it is further

Ordered that the Clerk of this Court shall immediately send to counsel of record for each of the parties to the proceeding, a copy of this memorandum. It is further ordered that jurisdiction of this cause be retained by this Court for purposes that have been heretofore stated.

A formal decree will be signed and entered in accordance herewith as soon as possible.