**Virginia WINTER et al., Plaintiffs,**

v.

**Robert B. DOCKING, in his official capacity as Governor of the State of Kansas, et al., Defendants.**

**No. W–4828.**

United States District Court,
D. Kansas.

Feb. 2, 1973.

Theodore H. Hill, Mearle D. Mason, Thomas H. Graber, Attys., Wichita, Kan., for plaintiff.

Vern Miller, Atty. Gen. for State of Kansas, William H. Ward, Asst. Atty. Gen., Topeka, Kan., for defendant.

Jack A. Quinlan, Topeka, Kan., for Kansas Legislative Coordinating Counsel.

Before HILL, Circuit Judge, BROWN, Chief Judge, and TEMPLAR, District Judge.

## OPINION

PER CURIAM.

This action is brought by plaintiffs on their own behalf and as a class action for other persons similarly situated, against proper state and local officials to have the 1972 Kansas House reapportionment bill, House Bill No. 2206, declared unconstitutional. After the filing of the action, the Kansas Legislative Coordinating Council was permitted to intervene for the purpose of assisting in the defense of the action.[1]

Generally, the plaintiffs urge the act in question resulted in the gerrymandering of the representative districts of the state for partisan and political purposes, and prevented "each citizen, taxpayer and voter from casting an equal vote for representative for the State of Kansas." That certain of the districts thus created do not contain near similar population and "provides representation not in the economical, political, and cultural interest of the affected counties." And that the bill ". . . is in effect, a 'crazy quilt' without rational basis."

The complaint sought temporary relief restraining the holding of the 1972 elections under the bill. Such temporary relief was denied simply because at the time the action was filed, the statutory election machinery of the State had been put into motion. An interference, at that late date, with such election procedures, would probably have compelled candidates for the House of Representatives over the State to run on an "at large" basis, rather than by designated districts.

The questioned reapportionment plan was based on the 1971 Kansas Agricultural Census. This court has approved the use of the state census for this purpose.[2] This census reflects a total state population of 2,249,248 persons. Under this census, the average district, population wise, would contain 17,994 persons. Under H.B. 2206, the highest population district is No. 34 with 19,124 persons; the low populated district is No. 29 with 17,012 persons. This is a 12.41 percent population deviation. The deviation, standing alone, would probably not be sufficient from which the court would be compelled to hold the apportionment unconstitutional. However, there are other facts here, when considered together with this population deviation, leading us to conclude H.B. 2206 does not meet constitutional requirements.

This court has, in prior opinions, carefully enunciated the guidelines that must be followed in the process of legislative reapportionment.[3] We need not prolong this opinion by a further ex-

---

1. K.S.A.1971 Supp. 46–1201.

2. Long v. Avery, 251 F.Supp. 541 (D. C.Kan.1965).

3. Long v. Docking, 283 F.Supp. 539 (D.C. Kan.1968); Long v. Docking, 282 F. Supp. 256 (D.C.Kan.1968); Long v. Avery, supra.

tended discussion of those cases. These guidelines are those required by the series of Supreme Court decisions in reapportionment cases.[4] Such guidelines are designed to achieve the Constitution's goal of equal representation given to equal numbers of people.[5]

■ As a point of beginning, in the area of legislative reapportionment we have emphasized the importance of near equality in population among the districts created. We have not required exact population equality of the districts, and have approved deviations in order to maintain integrity of political subdivisions such as counties, cities and townships. In addition, we have recognized the necessity for the creation of districts compact geographically and comprised of contiguous territory. Also, we have refused to approve such factors as history, economic or group interests as sole reasons for numerical deviations.

The Supreme Court of Kansas, in Harris v. Shanahan, 192 Kan. 183, 387 P.2d 771 (1963), also stated, "[T]here should be as close an approximation to exactness as possible and this is the utmost limit for the exercise of legislative discretion." In the same case, the legislative branch was admonished that the plan of apportionment should result in the various districts being compact, and those districts should contain a population and area as similar as may be in its economic, political and cultural interests. The Kansas Court in Harris, in the Syllabus by the Court, also stated, "The provisions of an act apportioning the state into legislative districts are so largely dependent upon each other that, if one or more of the districts are unconstitutionally apportioned, the entire apportionment is void." We put stress on what the Kansas Supreme Court has said because in some respects it has add-

ed to and supplemented the requirements for a valid legislative apportionment as enunciated by the Supreme Court of the United States. The Kansas legislature, in respect to the problem of reapportionment, is bound to comply with decisions of both the Supreme Court of the United States and the Supreme Court of the State of Kansas.

We need not discuss at any length the reapportionment resulting from enactment of H.B. 2206. A few of the results will adequately demonstrate sufficient constitutional deficiencies to require us to strike down the act.

What the act did to only a few of the counties of the State, under the tests enunciated by our prior decisions and by the Supreme Court of Kansas, is in itself sufficient to nullify the act. Crawford County, under the 1971 census, had a population of 38,240, and the areas of that county comprise parts of four districts. Two townships in the north central part of the county, Sherman and Crawford, which includes also the City of Girard, the county seat, are first carved from the county area generally and placed in another district comprised mostly of territory in Bourbon County. Vigorous complaint is made because several duly elected officials of the county residing at the county seat are cut off from most of the area they serve. Five townships in that county, Osage, Sheridan, Washington, Lincoln and Baker, as well as a small part of the City of Pittsburg, are thrown with four townships in Cherokee County to comprise a representative district. Two other townships, Walnut and Grant, are taken away from the county and placed in a district comprised chiefly of area located in Neosho County. Another part of the county, including most of the City of Pittsburg, comprise one representative district.

4. Swann v. Adams, 385 U.S. 440, 87 S.Ct. 569, 17 L.Ed.2d 501 (1967); Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); WMCA, Inc. v. Lomenzo, 377 U.S. 633, 84 S.Ct. 1418, 12 L.Ed.2d 568 (1964); Roman v. Sincock, 377 U.S. 695, 84 S.Ct. 1449, 12 L.Ed.2d 620 (1964); Lucas v. Forty-Fourth Gen. Assembly of Colo., 377 U.S. 713, 84 S.Ct. 1459, 12 L.Ed.2d 632 (1964).

5. Wesberry v. Sanders, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964).

Sumner County serves as another similar example. That county is divided in such fashion that parts of the county are put into five different representative districts, although it had a population of 23,817, which was more than sufficient to create one entire district. Without apparent reason, the little City of Conway Springs in Sumner County is divided between two representative districts. One township, Gore, in Sumner County is placed with Rockford Township from Sedgwick County, together with five townships in Butler County, plus the City of Augusta, to form District 77. Guelph and Walton Townships are placed with a part of Cowley County to form District 79; and two other townships in Sumner County, Eden and Conway, are carved out and placed with territory from Sedgwick, Kingman and Reno Counties to form District 81. One township, Oxford, is carved out and included in a district comprised otherwise of a portion of Cowley County. At the same time, six townships on the west side of Kingman County are taken from that county and placed with Pratt County and a portion of Stafford County to form District 102. Six townships on the east side of Reno County are placed with two townships from Sedgwick County and seven townships from Harvey County to form District 101. Butler County, with a population of 38,501, is cut in such fashion that parts of the county are used to form five separate districts.

There are numerous other instances of disregard for the integrity of political subdivision boundaries. The small cities of Stockton, a county seat town in Rooks County, and Reserve in Brown County are both divided between two districts. Cherokee County, with a population of 21,594, is cut in such fashion that parts of the county are in three separate districts.

During the 1972 session, an alternate plan of reapportionment evolved and was known as the Ungerer plan. This plan was presented to and rejected by the House sitting as the committee of the whole. It was formulated by a group of legislators headed by Representative Ungerer of Marshall County and prepared with the assistance of the Legislative Research Department. The plan was well circulated among members of the House and the apportionment committee during the 1972 session. The plan was put in evidence in this case to demonstrate the possibility of apportioning the state with less than a seven percent deviation, and with a much higher degree of compactness and contiguity of the areas comprising the various districts. This plan also demonstrates that an apportionment may be accomplished without the widespread disregard for political subdivision boundaries as resulted in H.B. 2206. Under this alternate plan, 106 of the 125 districts would fall within a population deviation of not more than four percent. Only 70 districts under H.B. 2206 came within this limit of deviation.

A view of the state map outlining the districts created by H.B. 2206 sustains plaintiffs' contention that the apportionment under H.B. 2206 "is in effect, a crazy quilt" and "without rational basis." Many of the created districts particularly in the eastern half of the state, are lacking in compactness and contiguity.

Under the evidence before us, we are compelled to find that the plan of apportionment represented by H.B. 2206 was based primarily upon the desire of the authors of the plan to eliminate the necessity of any incumbent members of the House, particularly majority party members, to seek reelection against one another. The prime objective of the plan was to protect incumbents. In so doing, the population deviation exceeded necessary limits, the political subdivision boundaries, in many instances, were unduly disregarded, and many of the newly created districts were lacking in compactness and contiguity.

We will again repeat that we view legislative redistricting basically and primarily as a legislative responsibility and have no desire to engage in

such a function unless compelled by either the inactivity of the legislature or the failure of the legislature to reapportion in a constitutional fashion. We are confident the legislature of Kansas can and will effectively and constitutionally carry out its responsibilities in this area. The Kansas legislature is now in session, and the present House of Representatives is composed of members elected pursuant to the mandate of H.B. 2206. So that all legislative functions of this session may be effectively carried out and the processes of our state government not be hampered, we propose to permit the present membership of the House of Representatives to stand as it is presently constituted until the expiration of the terms of the present members. The legislature as presently constituted should be given a reasonable time in which to enact into law a valid reapportionment of the Kansas House of Representatives. In the event such a reapportionment is not made within such reasonable time, this court will be compelled to proceed to make a judicial reapportionment of the House of Representatives, thus giving to the voters of the State of Kansas an opportunity in the 1974 election process to elect members of a validly constituted House of Representatives.

We are compelled to, and do, conclude that the 1972 Kansas House reapportionment bill, House Bill No. 2206, is invalid and unconstitutional. For the reasons above expressed, we withhold the effectiveness of our action until February 16, 1974. On that date, in the event a valid reapportionment of the House has not been effected, this court will proceed with a judicial reapportionment in order to meet the statutory time requirements for the holding of the 1974 state elections. In any event, the presently constituted Kansas House of Representatives will otherwise continue to function without the effect of this decree until the expiration of the terms of office of the members.

The court expressly retains jurisdiction of the action to carry out the intent of the decree and to make and enter such orders as are deemed appropriate in the premises.

It is the intention of the court that this opinion serve as the findings of fact and conclusions of law of the court, and as the Decree and Judgment of the court.