No. 50,905

Petition of the Attorney General, Robert T. Stephan, To Determine the Validity of Senate Bill No. 220.

(593 P.2d 1)

Opinion filed April 4, 1979.

The opinion of the court was delivered by

Schroeder, C.J.: This is an original action pursuant to article 10, section 1(b) of the Constitution of the State of Kansas to determine the validity of 1979 Senate Bill No. 220, reapportioning the state senatorial districts. For the reasons stated, this legislative enactment is held to be valid.

At the general election held on August 6, 1974, the qualified electors of Kansas adopted article 10 of the Kansas Constitution on apportionment of the legislature. The portion of article 10 of

the Kansas Constitution material to our decision herein now reads:

"(a)  At its regular session in 1979, and at its regular session every tenth year thereafter, the legislature shall enact *a statute* reapportioning the state senatorial districts and representative districts. *Bills reapportioning legislative districts* shall be published in the official state paper immediately upon final passage and shall be effective *for the next following election of legislators* and thereafter until again reapportioned.

"(b)  Within fifteen days after the publication of an act reapportioning the legislative districts within the time specified in (a), the attorney general shall petition the supreme court of the state to determine the validity thereof. The supreme court, within thirty days from the filing of the petition, shall enter its judgment.   .   .   .

.   .   .   .   .

"(d)  Whenever a petition or application is filed under this section, the supreme court, in accordance with its rules, shall permit interested persons to present their views.

"(e)  A judgment of the supreme court of the state determining a reapportionment to be valid shall be final until the legislative districts are again reapportioned in accordance herewith." (Emphasis added.)

Senate Bill No. 220 was introduced on February 5, 1979, by the Senate Committee on legislative apportionment. The bill was then referred to the Senate Committee of the Whole where it was amended on February 7. On final action that same day, the Senate passed the bill as amended. The bill was then received by and introduced into the House of Representatives, immediately referred to the House Committee of the Whole where it was amended, and on final action was passed by the House. On February 13, the Senate concurred in the House amendments and on the following day the bill was enrolled, and presented to and signed by the Governor. On February 17, the bill was published in the official state paper. These proceedings presented by the record are regular in all respects and conform to the applicable legislative rules and constitutional and statutory law concerning the enactment of legislation. The details of the proceedings are recorded in the journals of the Senate and the House of Representatives.

The petition of the attorney general to determine the validity of Senate Bill No. 220 was filed March 5 (March 4, 1979, being a Sunday) and a hearing on the matter was held by the Supreme Court on March 19, 1979. As required by the constitution, all interested persons were permitted to present their views on the

Senate apportionment bill to the Court in accordance with its order filed on March 6, 1979.

The attorney general filed a lengthy petition accompanied by a memorandum and argued the matter to the Court, taking a neutral position.

Though not technically an adversary proceeding, all persons responding to the Court's notice entered appearances in opposition to the apportionment set forth in Senate Bill No. 220. They are:

1. Harold and Bessie Allcorn
   Coffeyville, Kansas

2. Jack R. Allcorn
   Coffeyville, Kansas

3. Marvin Wm. Barkis
   Representative—15th District
   Paola, Kansas

4. Chandler Price Berryman
   Coffeyville, Kansas

5. Marjorie A. Carpenter
   Louisburg, Kansas

6. Coffeyville Community
   Junior College           ) Maurice Weinberg
   Board of Trustees         ) Earle Biggerstaff
   Coffeyville, Kansas       ) Gary Murdock
                             ) H. B. George
                             ) J. Henry Hedley
                             ) Vesta Wheeler

7. Beatrice Currigan
   Louisburg, Kansas

8. Larry E. Erne
   Representative—7th District

9. Gregg P. Lewis
   First National Bank
   Osawatomie, Kansas

10. Kansas Coalition
    for Reapportionment ) Common Cause in Kansas
                        ) League of Women Voters
                        ) of Kansas

MEMBERS  ————  ) American Civil
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀) Liberties Union—Kansas
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀) Kansas Women's
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀) Political Caucus

Co-chairpersons ) John R. Mettner, Jr.
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀) Common Cause in Kansas
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀) Topeka, Kansas

⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀) Barbara Neff
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀) League of Women Voters of Kansas
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀) Topeka, Kansas

11. Jane Matzkanin
⠀⠀⠀Louisburg, Kansas

12. Cathy Paddy
⠀⠀⠀Louisburg, Kansas

13. Janet R. Rhind
⠀⠀⠀Louisburg, Kansas

14. Philip H. Schwiesow
⠀⠀⠀Louisburg, Kansas

15. Mr. and Mrs. George Seuferling
⠀⠀⠀Louisburg, Kansas

16. Dave Webb
⠀⠀⠀Representative—27th District
⠀⠀⠀Stilwell, Kansas

17. Dorothy and Karl White
⠀⠀⠀Louisburg, Kansas

18. Karl M. Wilson
⠀⠀⠀Member, State Board of Education
⠀⠀⠀Coffeyville, Kansas

19. Wint Winter
⠀⠀⠀Senator—11th District
⠀⠀⠀Ottawa, Kansas

Arguments were made to the Court by

1. Robert T. Stephan
⠀⠀⠀Attorney General
⠀⠀⠀Topeka, Kansas

2. Marvin Wm. Barkis
   Representative—15th District
   Paola, Kansas

3. Larry E. Erne
   Representative—7th District
   Coffeyville, Kansas

4. Kansas Coalition for Reapportionment
   by: John R. Mettner, Jr.
         Topeka, Kansas
            with
         Barbara Neff
         Lawrence, Kansas
         responding to questions

5. Philip H. Schwiesow
   Louisburg, Kansas

6. Wint Winter
   Senator—11th District
   Ottawa, Kansas

The Court after hearing all arguments on the matter took into consideration the exhibits presented to the legislature, which were made a part of the record before the Court, and it took judicial notice of relevant official records.

It should be noted this is the first time article 10 of the Kansas Constitution has governed a reapportionment act of the legislature and there is no judicial precedent in Kansas.

The constitution requires the Supreme Court to determine the validity of the legislative apportionment act. But the constitution neither defines "valid" nor specifies the criteria the Court should apply in assessing the validity of a reapportionment act. In our opinion the act must be valid both as to the procedure by which it became law and as to the substance of the apportionment itself to satisfy the constitutional requirements. *Harris v. Anderson,* 194 Kan. 302, 400 P.2d 25, *cert. denied* 382 U.S. 894 (1965).

Only one procedural point has been challenged. It is contended by Senator Wint Winter that Senate Bill 220 presents the Supreme Court with only the senatorial half of the total apportionment plan required; that article 10, section 1(*a*) mandates a single, comprehensive, apportionment statute, encompassing the entire legislature.

It is argued the language in article 10, section 1(*a*) which reads: "the legislature shall enact *a statute* reapportioning the state senatorial districts and representative districts" (emphasis added) contemplates a singular reapportionment bill each ten years.

The very next sentence in article 10, section 1(*a*), however, reads: "*Bills* reapportioning legislative districts shall be published in the official state paper immediately upon final passage and shall be effective *for the next following election of legislators.*" (Emphasis added.) While the two provisions appear to be inconsistent, we think the inescapable conclusion is that the constitutional provision contemplates and permits the possibility of more than one bill reapportioning the legislative districts in the House of Representatives and in the Senate. The logic of this conclusion can be tested by a simple example. If the legislature had enacted one bill apportioning the legislative districts in both the House and the Senate, and the Supreme Court found the apportionment of the districts in only the House to be invalid, would the entire apportionment act be invalid, including the apportionment of the Senate? We think a negative answer is required.

Accordingly, we find Senate Bill No. 220 which reapportions only one of the two houses in the legislature is valid procedurally and meets the constitutional requirement for apportionment of the senatorial districts.

Our review concerning Senate Bill No. 220 must now be focused upon the substantive validity of the reapportionment of the senatorial districts.

Many state and federal cases concerning the constitutional requirements for reapportionment of legislative districts have been decided since the early 1960's, commencing with *Baker v. Carr,* 369 U.S. 186, 7 L.Ed.2d 663, 82 S.Ct. 691 (1962). The constitutional principle underlying reapportionment litigation is founded on Fourteenth Amendment equal protection concepts. It requires as nearly as practicable that one person's vote in an election is to be worth as much as another person's vote. *Reynolds v. Sims,* 377 U.S. 533, 12 L.Ed.2d 506, 84 S.Ct. 1362 (1964). This doctrine has been popularized as "one person-one vote." Population, of necessity, is the controlling criterion for judgment in legislative apportionment cases. *Long v. Avery,* 251 F. Supp. 541, 551 (D. Kan. 1966). The law is simple; its application is difficult.

In this case, the principle is applied by dividing the total population of the state (2,359,262) by the number of senatorial districts drawn by the reapportionment act (40) and then comparing the population of the resulting "ideal district" (58,982) with the population of each of the newly drawn senatorial districts. It is noted the legislature's use of the Kansas State Board of Agriculture's census figures was upheld in *Winter v. Docking*, 373 F. Supp. 308 (D. Kan. 1974). Insignificant deviations from the population of the ideal district are permitted without justification unless there is established a convincing case that a violation of equal protection is involved. Significant deviations must be justified by a rational state policy. *Mahan v. Howell*, 410 U.S. 315, 35 L.Ed.2d 320, 93 S.Ct. 979 (1973); *White v. Regester*, 412 U.S. 755, 37 L.Ed.2d 314, 93 S.Ct. 2332 (1973).

To determine whether the deviation in population is insignificant, the sum of the greatest percentage above the ideal and the greatest percentage below the ideal, which has been termed "total deviation" and perhaps more accurately "total maximum variation," is compared with total deviations previously approved by case law. We note the total deviation permitted by Senate Bill No. 220 is 6.5% (the sum of 3.1% above the ideal in districts 10 and 12 and 3.4% below the ideal in district 39). *White v. Regester*, 412 U.S. at 761-64, approved a total deviation of 9.9%. Senate Bill No. 220 is within those bounds and we believe the total deviation of 6.5% is proper under existing federal law, if it is justified by a rational state policy.

A fair and reasonable apportionment of the legislative districts of the whole state must be formulated primarily by the legislative process with all of its political trappings and necessary compromises. That districts could have been drawn with smaller percentage deviations from the ideal than were actually drawn during the legislative process, thus establishing deviations nearer the ideal, will not invalidate an apportionment plan that is constitutionally sound.

The United States District Court for the District of Kansas, sitting as a three-judge district court, has rendered opinions as to various Kansas apportionment statutes on seven occasions in two separate cases: *Long v. Avery*, 251 F. Supp. 541 (D. Kan. 1966); later opinions *sub nom Long v. Docking*, 282 F. Supp. 256 (D.

Kan. 1968); and 283 F. Supp. 539 (D. Kan. 1968); later opinions *sub nom Anderson v. Docking,* unpublished opinions (D. Kan. Case No. W-3220, March 31, 1972 and April 7, 1972); *Winter v. Docking,* 356 F. Supp. 88 (D. Kan. 1973) and 373 F. Supp. 308 (D. Kan. 1974). *Anderson v. Docking* is still an open and pending case.

*Winter v. Docking,* 373 F. Supp. at 309, held small deviations in equality among voting districts no longer required justification, and larger deviations were permissible when resulting from implementation of a rational state policy.

The Kansas Supreme Court has not addressed an apportionment issue since *Andrews v. Board of County Commissioners,* 207 Kan. 548, 485 P.2d 1260 (1971). Since 1960 our court has considered statewide apportionment in two cases which resulted in five separate opinions. *Harris v. Shanahan,* 191 Kan. 1, 378 P.2d 157 (1963); *Harris v. Shanahan,* 192 Kan. 183, 387 P.2d 771 (1963); *Harris v. Shanahan,* 192 Kan. 629, 390 P.2d 772 (1964); *Harris v. Anderson,* 194 Kan. 302; *Harris v. Anderson,* 196 Kan. 450, 412 P.2d 457 (1966). See *Reynolds v. Sims,* 377 U.S. 533.

In *Harris v. Anderson,* 196 Kan. 450, the Court acknowledged that county boundary lines could properly be observed as long as the basic standard of equality of population among districts is maintained.

The legislative committee which drafted Senate Bill No. 220 took into consideration future population trends and it gave priority and used as a guideline the preservation and integrity of existing political subdivisions (counties) so far as practicable. These criteria, in our opinion, are borne out by a study of the apportionment plan for the senatorial districts, and establish a rational state policy adopted by the legislature in the apportionment of the senatorial districts. We find the apportionment plan here under review to be valid.

For the most part, the senatorial districts established in the apportionment plan respect the integrity of existing political subdivisions of the state — the county boundary lines. A few of the districts where deviations from the county boundary lines occur are attacked by the objectors as political gerrymandering. Districts 11, 12, 14 and 15 are identified. Miami County is divided between the 11th and 12th districts. It is argued the division of Miami County violates longstanding tradition of the

county as a viable, active political unit which is a strong, growing, economic unit. It is argued the apportionment plan inadequately considers growth and population trends in the eastern part of Kansas, including Miami County. The 11th district includes all of Franklin County, the northern tier of townships in Osage County, the eastern half of Osage County, the southern tier of townships of Douglas County and the southern tier of six townships of Johnson County and the northwest four townships of Miami County. Its deviation from the ideal population is plus 2.3%. The 12th district includes Allen, Bourbon and Linn Counties and the eastern half of Anderson County and the southeastern half of Miami County. It has a deviation from the ideal population of plus 1.5%.

These districts are fairly compact and fall within permissible deviation standards. The positive deviation in the 12th district is consistent with the overall growth trend in the district. While the northern portion of Miami County in the district has in the past eight years indicated growth in population, the decline in population in Anderson County and the slow growth rate in the remainder of the district tends to neutralize the growth in the Louisburg area.

Objection is made to the inclusion of Coffeyville in the 14th district. The district includes Neosho and Labette Counties, the northwest two townships of Crawford County and the city of Coffeyville and the Cherokee township of Montgomery County. It has a deviation from the ideal population of plus 1.9%. Except for Coffeyville the remainder of the district is declining in population growth. The special report of the legislative committee stated:

"The district is as close as practicable to the ideal population for the area and contains three medium size cities (Chanute, Parsons and Coffeyville) which all have a similar community of interests and are in the general population range of 10,000 to 15,000. Cherokee township includes the urban fringes of Coffeyville. These communities have a similarity of legislative interests and are involved with the area's farming economy. The district is easily identifiable and easily understandable by the voters and is compact and contiguous. It was necessary to shift population to the east into this district and moving that part of Montgomery County was a practical solution." (Senate Journal, February 5, 1979, p. 91.)

The 15th district includes Chautauqua, Elk, Wilson and Woodson Counties and Montgomery County (except the city of Coffeyville and Cherokee township), the western half of Ander-

son, and the eastern half of Coffey County. It has a deviation from the ideal population of plus 0.9%. The special report of the legislative committee stated:

"This district had the greatest amount of population deficiency of the existing districts in southeast Kansas and it was also necessary to move some population to the east. It has a population of within 0.9% of the ideal population. The western part of Anderson County and the eastern part of Coffey County contained in this district are generally bounded to the east and west respectively by major thoroughfares which will aid in making the district easily identifiable and easily understandable by the voters. It now contains all of the Chautauqua Hills area of the state and center part of the surrounding Osage Questes. There appears to be absolute similarity of a community of interests and the economy is basically that of farming and ranching. A major easily identifiable thoroughfare runs north-south through the district giving easy access to the major population centers of the district." (Senate Journal, February 5, 1979, pp. 91-92.)

Objectors contend a basic problem in the reapportionment of the senatorial districts is the "heaviness" of the eastern districts. It is argued 1,205,239 people reside in the twenty eastern districts (1 to 21, excluding 17); that this is 51.1% of the population and this majority cannot elect a majority of the Senate. It is contended this is the fastest growing area of the state and indications are that the imbalance will be more pronounced as time goes on.

A study of population growth trends from 1970 to 1978 in general indicates that some of the greatest negative deviation factors appear in districts where a greater growth trend is indicated (district 39 with a minus 3.4% shows a 29% increase in population), while some of the greatest positive deviation factors appear in districts where growth is slower.

The objection to the bill on the ground that there was partisan political gerrymandering in redistricting the senatorial districts does not reveal a fatal constitutional flaw absent a showing of an equal protection violation. No such showing has been made.

While a majority of Kansans regardless of where situated should be able to elect a majority of the state's senators, this is not required by the cases interpreting the constitution. Inherent in the concept that mathematical precision in drawing apportionment districts is not required, and that some deviation from the ideal is permitted, is the possibility that not every majority in a state will be able to elect a majority of its senators.

Judgment is entered upholding the validity of 1979 Senate Bill No. 220 which reapportions the senatorial districts of Kansas.