Robert C. BACON, Charles Bussing, Martha Masington, Larry Plaggerman, Clyde A. Townsend and all persons similarly situated, Plaintiffs,

v.

John CARLIN, Governor of the State of Kansas, Jack H. Brier, Secretary of State of the State of Kansas, Ross O. Doyen, President of the Kansas Senate, Mike Hayden, Speaker of the Kansas House of Representatives, Dan Thiessen, Chairman of the Kansas Senate Committee on Legislative and Congressional Apportionment, and Edgar Moore, Chairman of the Kansas House Committee on Legislative and Congressional Apportionment, Defendants.

Civ. A. No. 83–4233.

United States District Court,
D. Kansas.

Dec. 21, 1983.

Norman E. Gaar of Gaar & Bell, Overland Park, Kansas (Kerry Patrick, Overland Park, Kansas, Joseph A. Knopp of Everett, Seaton, Knopp & Thompson, Manhattan, Kansas, and Richard A. Pinaire of Hoover, Schermerhorn, Edwards & Pinaire, Junction City, Kansas, with him on the briefs), for plaintiffs.

Jeffrey S. Southard, Asst. Atty. Gen. (Robert T. Stephan, Atty. Gen., with him on briefs), Topeka, Kansas, for defendants.

Linda R. Johnson filed an amicus brief for the League of Women Voters of Kansas, Topeka, Kan.

Before LOGAN, Circuit Judge, O'CONNOR, Chief Judge, and ROGERS, District Judge.

LOGAN, Circuit Judge.

Plaintiffs, five qualified Kansas voters, have brought this suit challenging the constitutionality of the present apportionment scheme of the Kansas Senate and House of Representatives. Defendants are the Governor of Kansas, the Secretary of State, the President of the Senate, the Speaker of the House of Representatives, and the chairmen of the House and Senate Committees on Legislative and Congressional Apportionment. The parties argued the case on stipulated facts before this three-judge panel convened pursuant to 28 U.S.C. § 2284(a).

The Kansas Constitution requires reapportionment of the Senate and the House of Representatives in 1979 and at every tenth year thereafter, but it does not indi-

cate what population figures are to be used for apportionment. *See* Kan. Const. art. 10, § 1. In 1979 the Kansas legislature passed and the Governor approved acts establishing the apportionment scheme presently in effect for both legislative bodies. The scheme was based on the 1978 State of Kansas Agricultural Census. The Kansas Supreme Court upheld the constitutionality of the apportionment acts in *In re Senate Bill No. 220,* 225 Kan. 628, 593 P.2d 1 (1979), and in *In re House Bill No. 2620,* 225 Kan. 827, 595 P.2d 334 (1979).

The agricultural census provided the most recent population figures that were available in 1979. Under current Kansas law, however, the 1978 agricultural census will be the last because in 1978 the Kansas legislature repealed the state agricultural census. 1978 Kan.Sess.Laws ch. 55, § 5. Enacted in its place was Kan.Stat.Ann. § 11–201, which provides that "the most recent population figures available from the United States bureau of the census as certified to the secretary of state by the division of the budget on July 1 of each year shall be used for all purposes in the application of the statutes of this state."

On December 31, 1980, the United States Bureau of the Census officially certified to the President the population figures for Kansas derived from the 1980 federal decennial census. The Kansas legislature has convened in regular sessions since the federal census figures have been available and has adjourned each time without enacting a new apportionment scheme based on the 1980 federal census. The Kansas Attorney General has issued an opinion stating that article 10, section 1, of the Kansas Constitution prohibits the legislature from reapportioning until 1989. Op.Att'y Gen. No. 83–33 (March 16, 1983).

In contending that the apportionment scheme for the Kansas Senate and House of Representatives violates the Equal Protection Clause of the Fourteenth Amend-

ment, plaintiffs do not challenge the constitutionality of the 1979 plan when enacted or its use of 1978 state agricultural census figures. Rather, plaintiffs contend that because the Kansas legislature has discontinued the state agricultural census, Kansas must now rely on federal decennial census data for reapportionment and that because the 1980 census reveals impermissibly large deviations from the population mean the state legislature must be reapportioned now. If the 1980 federal decennial census figures were used for purposes of apportionment, the ideal Kansas Senate district would contain 59,106 persons and the ideal Kansas House of Representatives district would contain 18,914 persons. The districts as they currently exist show deviations from these ideal population figures as high as 57.9% for the Senate and 100.41% for the House of Representatives.[1] The different method of counting in the two censuses causes much of this deviation. Unlike the federal census, the state agricultural census excluded aliens, transients, and military personnel stationed in Kansas who had not established residence here; it counted college students in the counties where their parents lived unless they had married or established a residence apart from their parents. *See Winter v. Docking,* 373 F.Supp. 308 (D.Kan.1974) (three-judge court). Because several cases have expressly held that Kansas may constitutionally establish legislative districts based on the agricultural census rather than the federal census, *e.g., id.; Meeks v. Avery,* 251 F.Supp. 245, 250 (D.Kan.1966) (three-judge court), defendants argue that the Constitution does not require use of the 1980 federal census figures for reapportionment. *See Burns v. Richardson,* 384 U.S. 73, 91–92, 86 S.Ct. 1286, 1296–1297, 16 L.Ed.2d 376 (1966) (Equal Protection Clause does not require the states to use total population figures derived from the

---

**1.** Maximum percentage deviation from the population mean has been used for measuring the constitutionality of an apportionment plan. *See, e.g., Abate v. Mundt,* 403 U.S. 182, 91 S.Ct. 1904, 29 L.Ed.2d 399 (1971). The maximum

percentage deviation is determined by adding the percentage deviation from the population mean of the most populous district to the percentage deviation of the least populous district.

federal census, but allows exclusion of aliens, transients and some others).

For purposes of this case, we assume that both houses of the Kansas legislature are malapportioned if the 1980 federal census must be used. The sole question we address is a novel one: whether the Equal Protection Clause may compel reapportionment of state legislative districts when the existing scheme is based on census figures less than ten years old and the scheme when enacted did not contain impermissibly large deviations.

In *Reynolds v. Sims*, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), the Supreme Court announced the fundamental constitutional principle that "an individual's right to vote for state legislators is unconstitutionally impaired when its weight is in a substantial fashion diluted when compared with votes of citizens living in other parts of the State." *Id.* at 568, 84 S.Ct. at 1385. Thus, the Constitution requires that "a State make an honest and good faith effort to construct districts, in both houses of its legislature, as nearly of equal population as is practicable." *Id.* at 577, 84 S.Ct. at 1390. The Court emphasized, however, that the mandate of the Equal Protection Clause "does not mean that States cannot adopt some reasonable plan for periodic revision of their apportionment schemes." *Id.* at 583, 84 S.Ct. at 1392. The Court then elaborated:

> "*Decennial reapportionment appears to be a rational approach to readjustment of legislative representation* in order to take into account population shifts and growth.... Limitations on the frequency of reapportionment are justified by the need for stability and continuity in the organization of the legislative system, although undoubtedly reapportioning no more frequently than every 10 years leads to some imbalance in the population of districts toward the end of the decennial period and also to the development of resistance to change on the part of some incumbent legislators. In substance, we do not regard the Equal Protection Clause as requiring daily,

monthly, annual or biennial reapportionment, so long as a State has a reasonably conceived plan for periodic readjustment of legislative representation. While we do not intend to indicate that decennial reapportionment is a constitutional requisite, *compliance with such an approach would clearly meet the minimal requirements for maintaining a reasonably current scheme of legislative representation.* And we do not mean to intimate that more frequent reapportionment would not be constitutionally permissible or practicably desirable. But if reapportionment were accomplished with less frequency, it would assuredly be constitutionally suspect."

*Id.* at 583–84, 84 S.Ct. at 1392–93 (emphasis added). Thus, since the existing Kansas apportionment scheme is less than ten years old, *Reynolds* indicates that the Constitution does not compel reapportionment until 1989.

Plaintiffs contend that *Reynolds* does not establish a categorical rule that the Constitution may not compel reapportionment when the existing scheme is less than ten years old. They rely in part on *Whitcomb v. Chavis*, 403 U.S. 124, 91 S.Ct. 1858, 29 L.Ed.2d 363 (1971). In *Whitcomb*, the district court had upheld the constitutionality of the challenged reapportionment scheme in 1965. But in 1969, after subsequent Supreme Court decisions revealed that the scheme had been unconstitutional when enacted, the district court held the same plan unconstitutional. Relying on *Reynolds*, the state argued on appeal that a state cannot be compelled to reapportion its legislative districts more than once in a ten-year period. The Court disagreed, stating:

> "Such a reading misconstrues the thrust of *Reynolds* in this respect. Decennial reapportionment was suggested as a presumptively rational method to avoid 'daily, monthly, annual or biennial reapportionment' as population shifted throughout the State. Here, the District Court did not order reapportionment as a result of population shifts ... but only because the disparities among districts which

were thought to be permissible at the time of that decision had been shown by intervening decisions of this Court to be excessive."

403 U.S. at 163, 91 S.Ct. at 1879 (footnote omitted).

*Whitcomb* is distinguishable from the instant case; it stands for the proposition that the Constitution may compel reapportionment more than once in a ten-year period if the apportionment scheme was unconstitutional when enacted. Here plaintiffs do not and could not contend that the Kansas apportionment plan now in effect was invalid when enacted.[2] Thus, *Whitcomb* does not indicate that the Equal Protection Clause compels reapportionment in the instant case.

Plaintiffs also rely on several other decisions in contending that the Kansas scheme is unconstitutional. In *Sixty-Seventh Minnesota State Senate v. Beens*, 406 U.S. 187, 92 S.Ct. 1477, 32 L.Ed.2d 1 (1972) (per curiam), the Supreme Court reviewed a 1972 district court holding that a 1966 apportionment was unconstitutional. The 1966 scheme apparently was based on population figures derived from the 1960 decennial census. *See id.* at 188–90, 92 S.Ct. at 1479–80 and *Honsey v. Donovan*, 236 F.Supp. 8, 15–16 (D.Minn.1964) (three-judge court). Although the parties did not raise and the Court did not directly address the relevance of the fact that the existing scheme was only six years old, the Court found that "judicial relief was appropriate" under the circumstances. 406 U.S. at 195, 92 S.Ct. at 1483. In *Flateau v. Anderson*, 537 F.Supp. 257 (S.D.N.Y.1982), *appeal dismissed*, 458 U.S. 1123, 103 S.Ct. 5, 73 L.Ed.2d 1394 (1983), the court upheld a 1982 challenge to a redistricting plan last amended in 1974 and based upon 1970 federal census figures. In *Farnum v. Burns*, 548 F.Supp. 769 (D.C.R.I.1982) (three-judge

court), the court declared invalid in 1982 an apportionment scheme enacted in 1974 and based on 1970 federal census data. The court, relying on *Whitcomb* and *Beens*, concluded that "a state can constitutionally be compelled to reapportion in time for the first election after a census, even where the existing reapportionment scheme is less than ten years old." *Id.* at 773.

Finally, in *Honsey v. Donovan*, 236 F.Supp. 8 (D.C.Minn.1964) (three-judge court) (opinion by Blackmun, Circuit Judge), cited in the amicus brief, the court held in 1964 that an apportionment plan enacted in 1959 was unconstitutional. The 1959 scheme was based on updated 1950 census figures.

All these cases are both consistent with *Reynolds* and distinguishable from the case at bar. What they tell us is that in 1989, if the Kansas legislature attempts to implement its constitutional provision requiring reapportionment by reliance upon 1980 federal census figures or those figures updated by estimates, constitutional problems will arise. But what might happen in 1989 is not before us; we are reviewing a scheme enacted into law in 1979 and currently in use. The accuracy of an apportionment scheme at any given time depends as much on the age of the data as the age of the scheme. In *Beens, Flateau, Farnum*, and *Honsey* the apportionment schemes declared unconstitutional were based on census figures over ten years old. Realistically, then, those plans were not the sort of "decennial reapportionment" schemes that the Court indicated "would clearly meet the minimal requirements for maintaining a reasonably current scheme of legislative representation." *Reynolds*, 377 U.S. at 583–84, 84 S.Ct. at 1392–93. In the instant case, on the other hand, the reapportionment scheme is only four years old and is based on census figures only five

---

**2.** Before the 1979 reapportionment scheme was adopted the annual agricultural census had been eliminated and Kan.Stat.Ann. § 11–201, referencing the federal census for state statutes, had been enacted. But no argument could be made that § 11–201 in combination with the Kansas constitutional provision required appor-

tionment based on the latest available federal census figures—then 1970. The 1979 reapportionment was by specific legislative enactments relying upon 1978 figures, the latest available, from a census of the type Kansas courts previously approved for reapportionment use.

years old. We therefore conclude that Kansas is not constitutionally compelled to reapportion its legislature at this time. Accordingly, we hold for defendants.